711 P.2d 28

STATE of New Mexico,
Plaintiff-Appellee,

v.

Apolinario VIGIL, a/k/a Paul Vigil,
Defendant-Appellant.

No. 8127.

Court of Appeals of New Mexico.

Oct. 31, 1985.

584

Paul G. Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet E. Clow, Chief Public Defender, Lynne Corr, Asst. Public Defender, Santa Fe, for defendant-appellant.

## OPINION

GARCIA, Judge.

Defendant was tried on three counts of criminal sexual contact with a minor, contrary to NMSA 1978, Section 30–9–13 (Repl.Pamp.1984). A guilty verdict was returned on two counts. The jury was unable to reach a unanimous decision as to the third count, and a mistrial was declared as to that count.

On appeal, defendant raises four issues: 1) whether the use of a videotape deposition violates standards prescribed by NMSA 1978, Section 30–9–17 (Repl.Pamp. 1984), and NMSA 1978, Crim.P. Rule 29.1 (Repl.Pamp.1985), and whether the use of a videotape deposition violates defendant's constitutional right of confrontation; 2) whether the court erred in permitting two witnesses to repeat statements made to them by the child victim; 3) whether the court erred in substituting the term "groin" for "vulva" or "vagina" in NMSA 1978, UJI Crim. 9.82 (Repl.Pamp.1982); 4) whether the court erred in allowing the state to cross-examine defendant on, and later, to introduce rebuttal testimony concerning instances of alleged prior sexual misconduct between defendant and another alleged victim.

## THE VIDEOTAPED DEPOSITION

Prior to trial, the state filed a motion seeking permission to present the testimony of the six-year-old victim by means of videotape. This procedure is specifically authorized by Section 30–9–17, and Rule 29.1.

The salutory intent of both the statute and the rule is to protect children who have allegedly been sexually abused from suffering further emotional harm or trauma. *See generally* Libai, *The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System,* 15 Wayne L. Rev. 977 (1969).

The statute permits a videotape deposition of a child victim of sexual assault, and the New Mexico Supreme Court has implemented the statutory protections by rule. Crim.P.R. 29.1 provides:

(a) Upon motion, and after notice to opposing counsel, at any time after the filing of the indictment, information or complaint in district court charging a criminal sexual penetration or criminal sexual contact on a child under thirteen years of age, the district court may order the taking of a videotaped deposition of the victim, upon a showing that the child may be unable to testify without suffering unreasonable and unnecessary mental or emotional harm. The district judge must attend any deposition taken pursuant to this paragraph and shall provide such protection of the child as the judge deems necessary.

(b) At the trial of a defendant charged with criminal sexual penetration or criminal sexual contact on a child under thirteen years of age, any part or all of the videotaped deposition of a child under thirteen years of age taken pursuant to Paragraph (a) of this rule, may be shown to the trial judge or the jury and admitted as evidence as an additional exception to the hearsay rule of the Rules of Evidence if:

(1) the child is unable to testify before the court without suffering unreasonable and unnecessary mental or emotional harm;

(2) the deposition was presided over by a district judge and the defendant was present and was represented by counsel or waived counsel; and

(3) the defendant was given an adequate opportunity to cross-examine the child, subject to such protection of the child as the judge deems necessary.

(c) In addition to the use of a videotaped deposition as permitted by Paragraph (b) of this rule, a videotaped deposition may be used for any of the reasons set forth in Paragraph (n) of Rule 29. [Adopted, effective July 1, 1980.]

In support of its motion for a video deposition, the state presented the testimony of Dr. Elizabeth Dinsmore, an expert clinical psychologist. Dr. Dinsmore testified that she had been treating the child regularly since October 1983. With the exception of a one-month hiatus, she had seen the child on a weekly basis. The child had been referred to Dr. Dinsmore because she had developed behavioral problems following incidents of reported molestation. The problems included frequent crying and clinging to her mother. Dr. Dinsmore testified that the child cried in her sleep and had frequent nightmares about a monster who stole little children and killed them. The child had many problems, was frequently ill and missed much school. Dr. Dinsmore had treated other victims of sexual attacks, and felt that this child's reaction was beyond the norm in its severity. The doctor testified that the child expressed fear, anger and depression concerning the legal process. The psychologist expressed concern that requiring the child to testify before a jury would be a frightening experience, would undermine the child's therapeutic progress, and would also be an unreasonable imposition on the child. The doctor concluded that allowing the child to testify via videotape was less traumatic and was something the child could handle. Based on this evidence, the trial court determined that the child would suffer unreasonable mental or emotional harm by presenting live testimony and that there would be a diminished impact on the

child by allowing her to give a video deposition.

Defendant contends that there was not substantial evidence to support the court's finding that requiring the child to testify in open court would cause her to suffer unreasonable emotional harm. We utilize the substantial evidence test to determine whether the evidence supports the finding or conclusion. The basic rules of this test are: (1) that substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) that on appeal, all disputed facts are resolved in favor of the successful party, with all reasonable inferences indulged in support of the finding, and all evidence and inferences to the contrary discarded; and (3) that although contrary evidence is presented which may have supported a different verdict, the appellate court will not weigh the evidence or foreclose a finding of substantial evidence. *State v. Martinez*, 95 N.M. 445, 623 P.2d 565 (1981); *McCauley v. Ray*, 80 N.M. 171, 453 P.2d 192 (1968); *Tapia v. Panhandle Steel Erectors Company*, 78 N.M. 86, 428 P.2d 625 (1967). Dr. Dinsmore's testimony clearly qualifies as substantial evidence to support the trial court's finding that the minor child would suffer unreasonable and unnecessary mental or emotional harm.

Defendant next contends that use of the victim's deposition denied him the right of confrontation. Every person accused of a crime has a constitutionally protected right to confront his accuser. U.S. Const. amend. VI; N.M. Const. art. II, § 14. In *State v. Martinez*, the New Mexico Supreme Court discussed the use of video depositions and their relationship to an accused's right of confrontation. The court noted that the confrontation right must be interpreted in light of the law as it existed at the time the amendment was adopted. *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). According to *Mattox*, the primary purpose of the confrontation clause was:

> to prevent depositions or *ex-parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Id.* at 242–43, 15 S.Ct. at 339.

*Mattox* noted that generally a defendant should have the right to face his accusers at trial, but, "general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 243, 15 S.Ct. at 340.

Such is the situation here. There exists a strong public policy, as evidenced by Section 30–9–17 and by Rule 29.1, to protect child victims of sexual crimes from the further trauma of in-court testimony. *State v. Messier*, 101 N.M. 582, 686 P.2d 272 (Ct.App.1984). This public policy concern must be considered together with the rights of the accused. The statute and the court procedural rule seek to strike a balance between these competing interests.

The primary interest secured by confrontation is the right of cross-examination. "[A]n adequate opportunity for cross-examination may satisfy the [confrontation] clause even in the absence of physical confrontation." *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965).

Rule 29.1 satisfies defendant's right of cross-examination. The rule specifically provides that defendant must be given an adequate opportunity to cross-examine the child, subject to such protections as the court deems appropriate. Here, defendant does not argue that he was deprived of his right to fairly and fully cross-examine the child during the video deposition. To the contrary, defendant had an adequate oppor-

tunity to test the recollection and to sift the conscience of the child. Moreover, the jury heard the child's testimony and viewed the child, via videotape, while she testified. Thus, the jury also had an adequate opportunity to observe the child's demeanor during her testimony and cross-examination. We conclude that defendant's right of confrontation was not impaired and further, that the state presented substantial evidence in support of its request to utilize a video deposition of the child in lieu of live testimony.

## USE OF VICTIM'S PRIOR CONSISTENT STATEMENTS

■ In pretrial rulings, the court determined that the victim's videotaped deposition be allowed in lieu of the child's live testimony. The trial judge recognized that even with the use of the video deposition, it was possible that new information could be presented during the course of the trial which would compel defendant to call the child as his own witness. To lessen this possibility, the court directed that the deposition not be taken until the time of trial after all other state's witnesses had testified. Thus, prior to cross-examination of the child, defendant would have the full benefit of the testimony of the state's other witnesses. The court directed that the state present the videotaped deposition as its last item of evidence.

In its case-in-chief, the state sought to present prior statements made by the child, through the testimony of two other witnesses. The defendant objected to this procedure. The court noted, however, that the credibility of the child and of defendant were crucial issues and allowed use of prior consistent and inconsistent statements.

NMSA 1978, Rule 801(d)(1) (Repl.Pamp. 1983) states in relevant part:

A statement is not hearsay if:

(1) * * * The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

*　　*　　*　　*　　*　　*

(B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *.

Thus, a witness's prior statements are not hearsay if they come within the provisions of Rule 801(d)(1)(B). Here, the state introduced the victim's prior consistent statements to rebut implications that the child was not being truthful. Defendant argues that the credibility of the victim was not challenged during his cross-examination of her, and the record supports this argument. However, in opening statements, and later in the defense portion of the case, the defendant specifically challenged the veracity of the child's testimony. In opening, defense counsel stated to the jury:

[W]hat it really boils down to is the testimony of a six-year-old child who says one thing, and the defendant, Paul Vigil, who has entered a plea of not guilty, who has maintained his statement that he did not do these things. He's denying the fact that these instances took place, and you're going to be asked to make some assessments of both of these people's testimony.

Defense counsel's opening statement continued in this vein:

[W]e're not going to offer you any startling theories for what *really* happened or what's *really* going on in the mind of [name omitted] as she makes these charges * * *. [emphasis added].

Defense counsel told the jury that defendant did not do the things with which he had been charged and that the incidents simply did not happen. Thus, from the outset of the case the jury was apprised that the focal point of the trial would be the credibility of the six-year-old child. The opening statement made the victim's credibility the major issue and, taken as a whole, created the implication that the child was lying.

In addition, in discussing the child's motive for her statements, defendant, during his own cross-examination, indicated that her testimony could have been fabricated.

Normally, once defendant attacked the credibility of the victim by asserting that her statements were fabrications, the state could offer prior consistent statements to rebut the assertion or implication of a fabrication. Rule 801(d)(1)(B). In this case, the court allowed the prior consistent statements to be presented prior to defendant's testimony, but after the trial court had been alerted, by way of opening statements, that the victim's credibility would be attacked. Defendant continued to question the child's veracity throughout the trial and, in closing arguments, counsel theorized that the victim may have been encouraged to fabricate by family members.

In *State v. Conroy*, 131 Ariz. 528, 642 P.2d 873 (App.1982), a child molestation case, the court permitted testimony by an adult witness which related the victim's account of an alleged molestation. The victim's statements were admitted as prior consistent statements to rebut charges of fabrication. The Arizona Court of Appeals said:

> In this case, appellant attacked the credibility of the victim in his opening statement, cross-examined her with her prior denials at the preliminary hearing, and attempted to show that Loomis and Steeles had influenced the victim to testify the way she did.

*Id.* at 531, 642 P.2d 873.

The same is true in this case. The child's credibility was attacked in opening statement; defendant had an opportunity to cross-examine the child on the prior statements; in closing, defendant argued that the child may have been influenced by her family.

In *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979), the court held there was no abuse of discretion in admitting prior consistent statements of a witness when the defendant calls into question the witness's credibility. The "recent fabrication" requirement is satisfied when the credibility of a witness is attacked. *See United States v. Lombardi*, 550 F.2d 827 (2nd Cir. 1977); *United States v. Iaconetti*, 406 F. Supp. 554 (E.D.N.Y.1976). Finally, defend-

ant's assertion that the victim may be fabricating her testimony can serve as the appropriate foundation under Rule 801(d)(1)(B). *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977); *Commonwealth v. Saarela*, 376 Mass. 720, 383 N.E.2d 501 (1978) (no error in admitting prior consistent statements if statements would have been admissible if evidence presented in customary order). We conclude that the court did not err in allowing the prior consistent statements into evidence.

## WHETHER THE COURT ERRED IN USING THE TERM "GROIN" IN NMSA 1978, UJI CRIM. 9.24 (Repl.Pamp.1982)

■ The central elements of the crime of criminal sexual contact of a child under the age of thirteen are: 1) the defendant touched or applied force to [one or more of the designated portions] of the child's anatomy; 2) the child was twelve-years-old or younger; and 3) the incident occurred in New Mexico on or about a specific date. UJI Crim. 9.24. Among the approved terms to be used to designate portions of the anatomy are "vulva," "groin," and "vagina." UJI Crim. 9.24, Use Note 3.

Defendant's tendered instruction included the term "vagina," and the state's tendered instruction included the term "vulva." During the instruction settlement conference, the state expressed some concern that by virtue of the mandatory definition of "vagina," as being the canal or passage for sexual intercourse in the female, extending from the vulva to the neck of the uterus, *see* NMSA 1978, UJI Crim. 9.82 (Repl.Pamp.1982), the jury might mistakenly believe that only an interior touching of the canal, would satisfy the first element of the crime.

The court noted that UJI Crim. 9.24, Use Note 3, allows the term "groin" to be used. Further, the trial court noted that there was sufficient evidence to show that the child had been touched on her groin and, specifically, in the area where her sex organs were located.

In *State v. Doe*, 93 N.M. 206, 207, 598 P.2d 1166, 1167 (Ct.App.1979), the court noted:

Not having defined "groin" in the statute, and nothing to the contrary appearing, the Legislature is presumed to have used the common meaning of "groin". *State v. Garcia,* 78 N.M. 777, 438 P.2d 521 (Ct.App.1968). The common meaning, in Webster's Third New International Dictionary (1966) is "the fold or depression marking the line between the lower part of the abdomen and the thigh; also: the region of this line."

The *Doe* court found a touching of the groin within the meaning of the statute because the touching occurred in an area within the definition of the word groin. In the present case, the situation is similar. The child testified as to the area where she had been touched, and, by use of an anatomically correct, prepubescent female doll, indicated where she had been touched. The court saw the area to which the victim was pointing, and that area is all inclusive, containing within it the sex organs of the child. The use of the term "groin" was proper and there was no error in the instruction given.

## WHETHER THE COURT ERRED IN PERMITTING EVIDENCE OF PRIOR SEXUAL MISCONDUCT

The original indictment charged defendant with three counts of criminal sexual contact with the child, who was his granddaughter, and a fourth count charged defendant with sexual intercourse with his daughter. Because Count IV charged crimes occurring beyond the applicable statute of limitations, the court dismissed that count. An amended indictment charging a crime within the applicable statute of limitations was filed. The court severed the amended Count IV for a separate trial, and in pretrial motions, defendant succeeded in obtaining a ruling prohibiting the state from introducing evidence in its case-in-chief of prior sexual acts by the defendant which were not related to Counts I, II or III.

No evidence of prior sexual misconduct was presented by the state. However, during cross-examination of defendant, testimony was elicited to the effect that the granddaughter's story might be fabricated. Defendant stated, in a tender out of the jury's hearing, that there was a family conspiracy against him and suggested that this was the motive for the accusations that were made. Because of this suggestion, the court allowed the further examination concerning his family's motives for testifying and, over defendant's objection, allowed the state to ask if other members of his family had made accusations of sexual misconduct against him and whether the allegations were true. Defendant admitted, before the jury, that the accusations were made, but he denied their truth. With his denial, the court allowed the state to present extrinsic evidence of the prior deviant sex acts which had formed the basis of the severed Count IV. This evidence, presented by way of rebuttal, was offered for purposes of impeaching defendant.

While the Rules of Evidence provide that the credibility of a witness may be attacked by any party, attempts to do so by introduction of evidence of specific instances of conduct are strictly limited by the rules. NMSA 1978, Evid.R. 607, 608 (Repl.Pamp. 1983). In particular, Rule 608 provides in part:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, and not remote in time, be inquired into on cross-examination of the witness

(1) concerning his character for truthfulness or untruthfulness * * *.

Rule 608(b)(1).

■ Defendant contends the extrinsic evidence presented was not proper rebuttal evidence and that Rule 608 does not support the trial court's ruling. We agree. The rule does not allow extrinsic evidence by way of rebuttal, but rather permits questioning on cross-examination into a limited area. *State v. Ross,* 88 N.M. 1, 536 P.2d 265 (Ct.App.1975). Additionally, the

area of inquiry must be limited to specific instances of conduct concerning the witness's character for truthfulness or untruthfulness. *State v. Marquez*, 87 N.M. 57, 529 P.2d 283 (Ct.App.1974).

Here, the cross-examination was beyond the allowable scope authorized by Rule 608, in that it did not concern defendant's character for truthfulness; further, the admission of rebuttal testimony by defendant's daughter was contrary to the requirement that inquiry be limited to cross-examination. New Mexico has long followed the general rule that on collateral matters, a cross-examiner is bound and limited by whatever answer he elicits from the witness. *State v. Clevenger*, 27 N.M. 466, 202 P. 687 (1921). Adoption of Rule 608 did not change prevailing law. The extrinsic evidence cannot be sustained as proper rebuttal.

This same rule is enunciated in the evidentiary treatises. For example, McCormick on Evidence, Section 42 at 92 (3d ed.1984), states:

In jurisdictions which permit character impeachment by proof of misconduct for which no conviction has been had, an important curb is the accepted rule that proof is limited to what can be brought out in cross-examination. Thus, if the witness stands his ground and denies the alleged misconduct, the examiner must "take his answer * * *" he may not call other witnesses to prove the discrediting acts.

*See State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct.App.1970) (denials binding on the cross-examiner and extraneous evidence is inadmissible to contradict such denials.)

Similarly, in *State v. McKelvy*, 91 N.M. 384, 574 P.2d 603 (Ct.App.1978), the defendant was tried for murder and conspiracy. During cross-examination, and for the asserted purpose of attacking the truthfulness of defendant, he was asked whether he had ever admitted having bombed a house. Defendant denied having made the statement. On rebuttal, the state presented a federal agent who testified that de-

fendant made such an admission and had received immunity in exchange for his testimony against others. The Court of Appeals reversed defendant's conviction because improper rebuttal testimony had been admitted, and said:

Prior to the adoption of the Evidence Rules it was settled law in New Mexico that a witness could be cross-examined concerning specific acts of wrongdoing, but it was "equally well settled that the cross-examiner is bound by the answers given to such questions and cannot produce other and independent evidence with reference to such matters beyond that given by the assailed witness".

*McKelvy* at 385, 574 P.2d 603, quoting from *State v. Clevenger*.

In *McKelvy*, we held that a trial court was without discretion to admit evidence that is specifically prohibited by Rule 608(b). This determination was made despite the state's argument that defendant's rights had not been affected. We said:

The State contends that the admission of the rebuttal testimony did not affect a substantial right of defendant. See Evidence Rule 103(a). We disagree. The right affected was the right to exclude the extrinsic evidence admitted in rebuttal. That right is conferred by Evidence Rule 608(b) and is a substantial one.

*McKelvy*, 91 N.M. at 386, 574 P.2d 603.

In *State v. Ross*, a conviction was reversed when the trial court erroneously admitted extrinsic evidence of collateral matters which were unfairly prejudicial to the defendant. In reversing, we held:

[O]ne of the most important principles or policies behind the Rules of Evidence is to insure that the jury bases its verdict on relevant and material facts, and not on collateral information which leads the jury to believe the defendant is of bad character and therefore more likely than not to be guilty of the charge at issue.

*Id.* 88 N.M. at 4, 536 P.2d 265.

At trial the state based its argument for admissibility on impeachment. On appeal, the state abandons that argument and

states that evidence of prior sexual misconduct was admissible under NMSA 1978, Evid.R. 404(a) (Repl.Pamp.1983), which provides in part:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

\*  \*  \*  \*  \*  \*

(b) Other crimes, wrongs or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. [As amended, effective April 1, 1976.]

A discussion of the intent of this rule is necessary to our analysis of defendant's argument.

The primary purpose of Rule 404 is to protect the criminal defendant from unnecessary or unfair prejudice. It is to prevent the defendant from being convicted because he is bad or evil. Stated differently, the purpose of Rule 404 is to prevent the use of evidence of prior crimes to show the propensity of the defendant to commit crimes or to prove particular conduct.

J. Wentworth, Treatise on New Mexico Rules of Evidence, Section 404–2 (1983).

*State v. Mason,* 79 N.M. 663, 448 P.2d 175, 179 (Ct.App.1968), is a pre-rule case, but is nevertheless helpful in viewing the "common scheme or plan" argument advanced by the state. In *Mason,* defendant was charged with the commission of sexual offenses against four young victims, ages 11 and 12 and two aged 15. The state elected to try the charges involving only the 11 and 12-year-old victims. Defendant, by motion in limine, sought to prevent the state from introducing evidence concerning the older children. The motion was denied, and during the state's opening argument, reference was made to all of the victims and all of the acts committed. Further,

over defendant's objection, the state was permitted to present testimony from the two 15-year-olds concerning defendant's sexual misconduct directed at them. The evidence presented indicated that all of the sexual acts had occurred during the same year; all of the victims had been hired as babysitters; all incidents occurred in defendant's home; all victims had been induced to engage in sexual activities; and no violence was used. Defendant was convicted and appealed on the basis that the trial court erred in allowing the introduction of evidence of other separate and distinct offenses independent of the offenses for which he was being tried.

In *Mason,* as in this case, the state argued that the evidence showed a plan, scheme and design to entice young girls into defendant's home and to induce them to engage in sexual activities. The court rejected Mason's argument, and reaffirmed the rule announced in *State v. Velarde,* 67 N.M. 224, 354 P.2d 522 (1960), where the court stated:

It is a general rule that evidence of collateral offenses, though similar in character, are [sic] inadmissible in a criminal prosecution to establish a specific crime.

*Velarde* at 226, 354 P.2d 522.

The court reasoned that because of the emotional persuasiveness of evidence involving sex offenses and young children, the evidence of similar but distinct offenses with or upon other children should ordinarily be excluded. Such evidence may properly be received if it is relevant, and if it possesses probative value as to a material element of the crime charged, which is in issue, and upon which there is doubt, such as identity, intent or knowledge.

There is no dispute in this case as to identity. *See State v. Allen,* 91 N.M. 759, 581 P.2d 22 (Ct.App.), *cert.denied,* 91 N.M. 751, 580 P.2d 972 (1978). Nor is there an issue concerning intent, mistake or accident. This is not a case where a touching has occurred, and defendant argues that he did not intend it to be a sexual type of touching. Nor is there any issue as to

proof of motive, opportunity, preparation or plan. Thus, none of the exceptions under Rule 404(b) apply.

■ We determine that the introduction of extrinsic evidence of crimes not charged violated New Mexico Rules of Evidence and New Mexico case law. Because we are unable to state that the improper admission of evidence did not contribute to the conviction, we cannot state that the error was harmless. In sum, we affirm the trial court on issues one, two and three; we must reverse on issue four, and remand for a new trial.

IT IS SO ORDERED:

BIVINS and MINZNER, JJ., concur.