794 P.2d 380
**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**BENNY E., a Child,
Defendant–Appellant.**

**Nos. 11613, 11573.**

Court of Appeals of New Mexico.

April 26, 1990.

Hal Stratton, Atty. Gen., Margaret Mc-Lean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Peter Rames, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

APODACA, Judge.

Benny E., a fifteen-year-old child (the child), appeals from the children's court judgment adjudicating him a delinquent child. After a bench trial, the children's court determined that the child had committed criminal sexual contact of a minor. Six issues are raised on appeal: (1) denial of the right to confront a witness; (2) adequacy of notice of the crime charged; (3) unconstitutional vagueness of the statute prohibiting criminal sexual contact of a minor; (4) impropriety of leading the victim as a witness with a drawing or sketch drawn by the children's court judge; (5) inherent improbability that the child committed the offense; and (6) admission of testimony from an allegedly unqualified expert outside her area of expertise. We remand on the first issue because the children's court failed to make particularized findings that the victim would suffer unreasonable and unnecessary mental or emotional harm if required to testify in the child's presence. Unpersuaded by the child's arguments in connection with the remaining issues, we decide those issues against him and affirm the judgment as to those issues.

In January 1989, the child's mother took her eight-year-old daughter, Amanda (the victim), for an examination, because the girl had a vaginal discharge. Phyllis Tulk, a certified family nurse practitioner, examined the girl and cultured the discharge for a lab test. At that time, the victim did not admit that anyone had touched her vaginal area. Four days later, Nurse Tulk asked the victim's mother to return with her daughter. She informed the mother that the lab test indicated the girl had contracted gonorrhea. Nurse Tulk later testified at trial that the victim told her the child had taken off his clothes and the victim's clothes and touched his private parts to her private parts. Six days later, Dr. Wooleson examined the child for venereal disease. The child had complained he had a discharge for two months. A sample of the discharge was sent to a lab; the results confirmed the child had contracted gonorrhea.

At trial, the victim testified in chambers with only counsel and the judge present. The child observed the victim testify on a video monitor located in another room. She testified that the child touched her private parts with his private parts, as he moved on top of her. She stated this occurred during a period of time when her father was in jail and her mother was at work.

## Denial of the Child's Right to Confront the Victim

■ The child argues his right to confront a witness against him was violated when the trial court permitted the victim to testify outside his physical presence. This court previously considered this issue in *State v. Tafoya*, 108 N.M. 1, 765 P.2d 1183 (Ct.App.1988), *cert. denied*, 489 U.S. 1097, 109 S.Ct. 1572, 103 L.Ed.2d 938 (1989), after remand from the United States Supreme Court for further consideration in light of *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). In *Coy*, the defendant was charged with sexually assaulting two thirteen-year-old girls. The assailant had worn a stocking mask over his head, shined a flashlight in the girls' eyes, and warned them not to look at him. Neither girl was able to describe his face. Under a pertinent state statute, the trial court approved the use of a screen between the defendant and the victims during their testimony. This procedure enabled the defendant to perceive the witnesses, without permitting the witnesses to see him. The Supreme Court held that the use of the screen violated his right to a face-to-face encounter under the confrontation clause of the United States Constitution. *Id.* at 1015–17, 108 S.Ct. at 2800, 101 L.Ed.2d at 863.

*Coy* nonetheless observed that the "rights conferred by the Confrontation Clause are not absolute, and may give way to other important interests." *Id.* at 1020, 108 S.Ct. at 2802, 101 L.Ed.2d at 866. The Supreme Court did not determine whether any exceptions existed, but stated that "[w]hatever [the exceptions] may be, they would surely be allowed only when necessary to further an important public policy." *Id.* at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. In a concurring opinion, Justice O'Connor expressed her view that protection of child witnesses is an important policy consideration. *Id.* at 1025–26, 108 S.Ct. at 2805, 101 L.Ed.2d at 869. So much so, she added, that if a court makes a case-specific finding of necessity, the strictures of the confrontation clause may give way to that policy. *Id.*

The defendant in *Tafoya* was charged with sexually assaulting six young girls. In each incident, a stranger invaded the victim's home after she was asleep. At trial, some of the victims testified by videotaped deposition in lieu of courtroom testimony. Under NMSA 1978, Section 30–9–17 (Repl.Pamp.1984) and SCRA 1986, 5–504 (Cum.Supp.1989), the trial court had discretion to order videotaped depositions of the children in lieu of trial testimony. Such an order was dependent upon a showing that "the child [was] unable to testify before the court without suffering unreasonable and unnecessary mental or emotional harm." R. 5–504(B)(1).

In *Tafoya*, the state requested that the defendant be required to observe the deposition on a video monitor from a control booth. The trial court then made careful and informed specific findings, weighing and balancing the particularized evidence. *Id.* at 4, 765 P.2d at 1186. *Tafoya* held that, despite the absence of a face-to-face meeting between the defendant and his accusers, there was no denial of the right to confrontation. The basis for this holding was two-fold: (1) the statute and rule required a showing of unreasonable and unnecessary mental or emotional harm to the victim, and (2) the trial court made individualized findings that the particular witnesses needed special protection.

In this appeal, the child was charged with criminal sexual contact of his eight-year-old sister. Before ruling on whether to allow the victim to testify outside the child's presence, the children's court stated that under the proposed procedures, the victim would continue to know the child was watching her testify. It also observed that the child would not suffer a detriment if he was not present during the victim's testimony. The record is absent of any individualized findings that the victim needed special protection.

■ Absent such findings, there is no legitimate distinction between the facts of this case and the facts of *Coy v. Iowa.* Under *Coy*, in the absence of particularized findings of special harm to a particular child witness, which are supported by substantial evidence, the child's right of confrontation requires that he be permitted to confront each of the witnesses against him, including the child victim. *See State v. Tafoya.* We therefore remand for such particularized findings. In this case, there was evidence from which the children's court could have determined that the victim would be emotionally or mentally harmed if required to testify in the child's presence. As occurred in *Tafoya*, a pre-trial hearing was held at which an expert testified of the harm the victim would suffer if required to testify in the physical presence of the child. Dr. Gerald Serafino stated that the victim was over-anxious, very easily embarrassed, and that she had difficulty expressing herself about the offense. When asked about the incident, she would start crying or look down. Dr. Serafino found the victim's behavior was more extreme than that of other victims of tender age. He opined that, if the child was present during the victim's testimony, the victim would feel traumatized and likely suffer unreasonable and unnecessary emotional harm. The child offered no evidence to rebut Dr. Serafino's testimony.

■ New Mexico, like many jurisdictions, has both a statute and a court rule under which a child witness, because of an inability to testify in front of the defendant

without suffering unreasonable harm, may testify by videotaped deposition. *See* § 30–9–17; R. 5–504. We have held that the procedure authorized by the statute and court rule is consistent with a defendant's sixth amendment right of confrontation. *See State v. Vigil,* 103 N.M. 583, 711 P.2d 28 (Ct.App.1985). The children's court may exercise its discretion in ordering protective measures when the harm to the victim outweighs defendant's right to a face-to-face confrontation. *State v. Tafoya.* However, these procedural measures must be reasonable and necessary to prevent trauma to the victim and there must be particularized findings to that effect. *Id.*

■ It is important that courts seeking to protect child victims from unnecessary trauma must carefully consider the defendant's sixth amendment right in light of any unreasonable mental or emotional harm the victim will suffer if required to testify in open court in the defendant's presence. In every case, the right of confrontation must be honored as it is stated in the Constitution, *see Coy v. Iowa,* unless there are circumstances justifying the deviation authorized by the rule or any special protection deemed necessary by the trial judge. *See State v. Tafoya.* In either case, there must be a showing by the state that persuades the trial court the deviation authorized by the statute or any special protection the state seeks is justified. Absent findings indicating the trial court was persuaded and why, the decision to deny a defendant his or her right of confrontation cannot be adequately reviewed on appeal. In this case, the children's court failed to make any individualized findings that the victim needed special protection. Even though the evidence we have already summarized may support the required individualized findings, making such findings is not our function as a reviewing court.

We recognize that the state has an important interest in protecting youthful witnesses. However, because the child's sixth amendment rights are involved, it is crucial that the procedural safeguards under the pertinent statute, rule and the applicable case law be strictly adhered to by the children's court. Thus, we believe that the appropriate remedy in this case is to remand for individualized findings concerning the victim's need for special protection. If, on remand, the children's court determines the victim would suffer unreasonable and unnecessary mental or emotional harm from testifying in the child's presence, the judgment will stand. If, on the other hand, the children's court determines the victim will not suffer unreasonable or unnecessary emotional or mental trauma, the child shall be entitled to a new trial.

■ The child next argues he was also deprived of his right to confront the victim in yet another manner. Specifically, he contends his cross-examination was severely affected by the victim's refusal to answer questions and by her inability to remember. The record indicates the victim was unable to answer many of the questions asked of her on cross-examination. She also responded to many inquiries by stating she could not remember. Nurse Tulk's and Dr. Serafino's testimony establish that the victim was terribly embarrassed by what had occurred. Nevertheless, her behavior was not tantamount to a refusal to testify. *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) held that the inability of an expert witness to recall how he arrived at his conclusion did not deny a defendant his right of cross-examination. The fact finder was free to determine the witness's opinion was as unreliable as his memory. We conclude the child's right of confrontation was satisfied in this appeal, since he had a full and fair opportunity to expose any infirmities of the victim's testimony. *See id.* at 19, 106 S.Ct. at 294.

■ The child also contends in his brief that the children's court improperly limited his questioning of the victim. We will not review this issue because it was not included in the docketing statement. *State v. Hernandez,* 95 N.M. 125, 619 P.2d 570 (Ct. App.1980).

*Adequacy of Notice of the Crime Charged*

■ The child was charged with violating NMSA 1978, Section 30–9–13 (Cum. Supp.1989), in that he unlawfully and intentionally touched or applied force to the intimate parts of his sister "[o]n or between November, 1988 and December, 1988." He contends he was not given adequate notice of the time when the offense occurred. The record reflects, however, that the charging document contained not only a time frame, but the name of the alleged victim. *See State v. Dobbs,* 100 N.M. 60, 665 P.2d 1151 (Ct.App.1983). The state was proceeding on the theory that only one incident of criminal sexual contact occurred. For this reason, we find it difficult to believe the child would have no knowledge of the crime charged. Under these circumstances, we hold he was given adequate notice to enable him to prepare a defense and to assure that any conviction or acquittal would be res judicata against a subsequent prosecution for the same offense. *See State v. Mankiller,* 104 N.M. 461, 722 P.2d 1183 (Ct.App.1986).

■ Apparently the child also contends there was some variance between the charge in the petition and the proof at trial with respect to the time of the offense. The victim testified that the incident occurred when her father was in jail. The record reflects her father was incarcerated from a few days before Thanksgiving 1988 to January 1989. The victim tested positive for gonorrhea on January 5, 1989. On January 16, 1989, the child complained to Dr. Wooleson that he had had a discharge for two months. He tested positive for gonorrhea on that date. The children's court could have reasonably inferred that the child transmitted gonorrhea to the victim through sexual contact during the time charged. We thus conclude there was ample evidence that criminal sexual contact took place in November or December 1988.

*Constitutionality of the Statute*

■ The child claims the statutory crime of criminal sexual contact of a minor is unconstitutionally vague because persons of ordinary intelligence must necessarily guess at the statute's meaning. *See State v. Najera,* 89 N.M. 522, 554 P.2d 983 (Ct.App.1976). The underlying principle for the constitutional requirement of definiteness for a criminal statute is that no one shall be held criminally responsible for conduct that he could not reasonably understand to be proscribed. *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). Section 30–9–13 defines criminal sexual contact of a minor as:

> unlawfully and intentionally touching or applying force to the intimate parts of a minor, other than one's spouse, or unlawfully and intentionally causing a minor, other than one's spouse, to touch one's intimate parts. For purposes of this section, "intimate parts" means the primary genital area, groin, buttock, anus or breast.

■ The child first argues that the statute is constitutionally defective because it does not define "groin." By not having specifically defined "groin," and nothing to the contrary appearing, the legislature is presumed to have used the common meaning of the word—the fold or depression marking the line between the lower part of the abdomen and the thigh, as well as the region of that line. *See State v. Vigil,* 103 N.M. at 589, 711 P.2d at 34 (quoting *State v. Doe,* 93 N.M. 206, 207, 598 P.2d 1166, 1167 (Ct.App.1979)). We believe this definition is sufficiently specific to withstand constitutional scrutiny. The child's first argument is therefore meritless.

■ The child next contends that "unlawful" has no clear meaning. We determine that this contention is similarly groundless. The term "unlawful" has been defined by our supreme court as "without excuse or justification," *Territory v. Gonzales,* 14 N.M. 31, 38, 89 P. 250, 252 (1907), and not authorized by law, given the relation of the parties. *See State v. Chenault,* 20 N.M. 181, 147 P. 283 (1915). The child's touching of his sister's vaginal area was neither justified nor authorized by law; it was thus unlawful. The child's examples of other touchings, such as a high school coach slapping a player's buttocks after a good play, may or may not violate Section

30–9–13, depending on the particular circumstances of a given case.

Suffice it to say that the child's defense did not encompass a theory that he was justified in touching the victim's private parts, such as may be done, for example, when bathing a youngster. As long as the general class of offenses to which the statute is directed is clearly within its terms, the statute will not be found to be unconstitutionally vague, even though marginal cases could be hypothesized where doubts might arise. *United States v. Harriss.*

### Error in Leading the Witness Victim With a Drawing

■ The victim testified during direct examination that the child touched her with his private parts on her private parts. During the state's effort on re-direct examination to have the victim explain what she meant by private parts, the court asked, "If I drew a picture, could you show me where it is?"

We requested the parties to brief the issue of whether we can consider the court's stick figure drawing or sketch on appeal, even though the drawing was not admitted as an exhibit. Although the child neglected to address this issue, the state, in its answer brief, supported the child's designation of the drawing as an exhibit necessary for appellate review. NMSA 1978, Section 32–1–39(A) (Repl.Pamp.1989) provides that an "appeal shall be heard by the court of appeals upon the files, records and transcript of the evidence of the children's court."

We believe the stick figure drawing, together with the victim's testimony, was evidence considered by the children's court in formulating its decision. We determine we could not resolve the child's claim that use of the drawing was improper without an opportunity to examine the document. *Cf. State v. Garcia,* 92 N.M. 730, 594 P.2d 1186 (Ct.App.1978) (issues argued below could not be intelligently considered without reference to the exhibits ordered by the court of appeals).

■ We next address the appropriateness of the children's court's use of the drawing in interrogating the victim. Having been shown the court's drawing, the victim identified the crotch area of the stick figure as the relative location of her private parts on her own body. When the child's counsel asked her if she understood what was meant by the crotch area on the drawing, the victim answered, "yes," pointing to the top of her leg. The drawing was clearly relevant to a determination of what part of the body she meant by private parts. *See* SCRA 1986, 11–401. Additionally, a judge may interrogate witnesses if, as here, the questions tend to clarify the evidence, provided the questions are cautiously guarded so as not to constitute an implied comment. SCRA 1986, 11–614. This case did not involve a jury trial. Thus, the issue of whether or not the judge's questions were "cautiously guarded" was not implicated. It was therefore not necessary to instruct a jury on how to evaluate the exchange between the judge and the victim. *Cf. State v. Stallings,* 104 N.M. 660, 725 P.2d 1228 (Ct.App.1986). To the extent that use of the drawing effectively led the victim to testify that "private parts" referred to her groin or primary genital area, we hold such use was permissible because it was necessary to develop her testimony. *See* SCRA 1986, 11–611. The child has not persuaded us that use of the drawing was an abuse of discretion. *See State v. Crump,* 97 N.M. 177, 637 P.2d 1232 (1981).

### Inherent Improbability that the Child Committed the Offense

■ Under this issue, the child argues that, since the state failed to prove there was any direct sexual contact between himself and the victim, it was inherently improbable for her to have contracted gonorrhea from him by sexual contact. Testimony is inherently improbable when what is claimed to have occurred could not in fact have happened. *See State v. Trujillo,* 60 N.M. 277, 291 P.2d 315 (1955).

■ To address this issue, we must review the evidence adduced in the children's court. The victim testified the child

touched her private parts with his private parts, as he moved on top of her. This account was corroborated by Nurse Tulk's testimony. The state established that both the victim and the child had contracted gonorrhea. Dr. Gray, an expert in pediatrics and child abuse, testified that gonorrhea is sexually transmitted during exchange of bodily secretions between genital, rectal or oral areas of the body, but that sexual penetration is not required. She also stated that gonorrhea does not survive on inanimate objects. From this evidentiary scenario, we conclude there was substantial evidence from which the children's court, as trier of fact, could infer that gonorrhea was transmitted from the child to the victim when he touched her vaginal area with his penis. A reviewing court may neither reweigh the evidence nor substitute its judgment for that of the finder of fact. *State v. McGhee,* 103 N.M. 100, 703 P.2d 877 (1985).

*Nurse Tulk's Testimony*

■■■ The child filed a motion to amend his docketing statement to include the issue of whether the children's court erred in admitting testimony from improperly qualified experts outside their area of expertise. In assigning this appeal to the general calendar, we directed appellate counsel to brief the procedural issue of whether the motion to amend should be granted, as well as the substantive issue. The child's counsel neglected to brief the procedural question. The child's motion to amend does no more than state that appellate counsel was not trial counsel, without explaining why the issue was omitted by trial counsel. We therefore deny the motion because it fails to show just cause or excuse for not originally raising the issue. *See State v. Rael,* 100 N.M. 193, 668 P.2d 309 (Ct.App.1983). We also deny the motion for another reason—the issue is not viable because it fails to result in reversible error. *See State v. Moore,* 109 N.M. 119, 782 P.2d 91 (Ct.App.1989). We so hold for the reasons that follow.

■■■ The child emphasizes that Nurse Tulk only had one week of training in June 1987, in support of his contention that she was not qualified as an expert in child sexual abuse. Nurse Tulk testified, however, that: (1) she specialized in diagnosing child sexual abuse from 1982 to 1988; (2) she extensively read journals and other materials dealing with the subject; and (3) she had attended a criminal justice program on sex abuse in New Mexico during 1988. She had been qualified to testify twenty-three times previously as an expert in child sexual abuse. We conclude she was a child sexual abuse expert based on her experience, training, and education. *See* SCRA 1986, 11–702; *State v. Macias,* 110 N.M. 246, 794 P.2d 389 (Ct.App.1990). Thus, the children's court did not abuse its discretion. *See Duran v. Lovato,* 99 N.M. 242, 656 P.2d 905 (Ct.App.1982).

■■ The child also claims the children's court erred in permitting Nurse Tulk to testify about the voluntariness of the victim's statement to her, which implicated the child. A lay witness may testify in the form of opinions that are rationally based on the witness's perception and are helpful to a clear understanding of the testimony or the determination of a fact in issue. SCRA 1986, 11–701.

Initially, the victim did not respond when asked by Nurse Tulk if she had been touched in the vaginal area. The nurse then asked the victim's mother who might have had contact with the child. When the mother mentioned the child's name, the victim dropped her eyes and looked away. She continued her refusal to implicate the child after Nurse Tulk told her she had to know what had happened to her. Nurse Tulk next stated that the problem would be reported to social services. She warned that the victim would have to identify the person who touched her, otherwise she would have to be protected outside her home. It was then that the victim exclaimed, "Mama, Benny did it." She cried, grabbed her mother and continued, "I told you he did it." Based on these facts, we conclude it was proper to admit Nurse Tulk's testimony on the voluntariness of the victim's statement implicating the child. *See* R. 11–701; *Estrada v. Cuaron,* 93

N.M. 283, 599 P.2d 1080 (Ct.App.1979) (personal observation is a key element in allowing lay opinion evidence).

■ The child finally argues that Nurse Tulk coerced the victim to name him as the person who touched her. Whether her statements were voluntary or motivated by fear that she would be placed in a foster home were questions for the children's court to decide. The record indicates the court considered all the evidence and determined that the child had sexual contact with the victim. We will not reconsider the evidence to decide whether it might be consistent with the child's theory that someone else transmitted gonorrhea to the victim. An appellate court does not evaluate the evidence to determine whether some hypothesis could be designed that is consistent with a finding of innocence. *State v. Sutphin*, 107 N.M. 126, 753 P.2d 1314 (1988). Substantial evidence existed from which the trial court could infer that the child had sexual contact with the victim, in violation of the statute.

In summary, we conditionally affirm, but remand under the first issue for particularized findings as required under this opinion. If, on remand, the children's court determines the victim would suffer unreasonable and unnecessary mental or emotional harm if required to testify in open court in the presence of the child, the judgment will stand. If, on the other hand, the children's court determines the victim will not suffer unreasonable trauma, the judgment will be set aside and the child will be entitled to a new trial. We are unpersuaded by the child's arguments on all other issues and therefore affirm the children's court's judgment with respect to those issues.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.