This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41016**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JACOB GRANZIN a/k/a**
**JACOB EUGENE GRANZIN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Court Judge**

Raúl Torrez, Attorney General
Felicity Strachan, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Jasmine J. Solomon, Appellate Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**YOHALEM, Judge.**

**{1}**     Defendant Jason Granzin appeals from his convictions of criminal sexual penetration of a minor (CSPM), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009); criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003); and attempt to commit CSCM, contrary to NMSA 1978, Section 30-28-

1 (1963, amended 2024). We vacate Defendant's conviction of CSCM on double jeopardy grounds, and remand for resentencing. We otherwise affirm.

**DISCUSSION**

**{2}** Defendant's conduct that led to his conviction of CSPM, CSCM, and attempted CSCM was directed at a single victim, Defendant's niece (Child), who was four years old at the time the offenses were committed. Defendant raises three issues for appeal. He claims (1) the district court's order allowing Child to testify by videotaped deposition violated the Confrontation Clause of the Sixth Amendment to the United States Constitution; (2) the late disclosure of a prior inconsistent statement made by Child violated Rules 5-501 and 5-505 NMRA, his right to due process set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and his right to cross-examination under the Confrontation Clause; and (3) his conviction of both CSPM and CSCM subjects him to double jeopardy for the same conduct, in violation of the Sixth Amendment to the United States Constitution. We discuss each issue in turn.

**I.      The Use of a Two-Way Videotaped Deposition to Take Child's Trial Testimony Did Not Violate Defendant's Sixth Amendment Right to Confrontation**

**{3}** The district court, over Defendant's objection, allowed Child, then nine-years old, to testify via a videotaped deposition taken a few weeks before trial. Defendant argues that allowing Child to testify, with Defendant watching by Zoom but not visible to Child, is unconstitutional under the Sixth Amendment because it denied Defendant physical, face-to-face confrontation with his accuser. Although Defendant could see and hear Child by a live internet connection, and communicate with his counsel, who was in the room with Child, and although Child was told Defendant was watching, Child could not see Defendant.

**{4}** Defendant concedes that our Supreme Court's opinion in *State v. Thomas*, 2016-NMSC-024, 376 P.3d 184, directly addresses the specific Confrontation Clause issue he raises on appeal. *Thomas* holds that "[a] criminal defendant may not be denied a physical, face-to-face confrontation with a witness who testifies at trial *unless* the court has made a factual finding of necessity to further an important public policy and has ensured the presence of other confrontation elements concerning the witness testimony including administration of the oath, the opportunity for cross-examination, and the allowance for observation of witness demeanor by the trier of fact." *Id.* ¶ 29 (emphasis added). Precedent from this Court has confirmed that *Thomas*'s requirement for a "finding of necessity to further an important public policy" is met by New Mexico's "strong public policy . . . to protect child victims of sexual crimes from the further trauma of in-court testimony." *State v. Vigil*, 1985-NMCA-103, ¶ 10, 103 N.M. 583, 711 P.2d 28. Both our Legislature, in statute, and our Supreme Court, in its rules of procedure, have approved of videotaped depositions of child victims in sexual assault cases so long as necessity to protect the child is found by the court. *See* NMSA 1978, § 30-9-17 (1978);

Rule 5-504 NMRA. Defendant does not contend that the district court either failed to make the necessary findings or to follow the procedures specified by Rule 5-504.

**{5}** Despite our Supreme Court's rejection of Defendant's argument in *Thomas*, Defendant requests that we certify this appeal to our Supreme Court, pursuant to NMSA 1978, Section 34-5-14(C) (1972), to allow the Court to reconsider its decision in *Thomas* in light of Defendant's argument that *Thomas* is inconsistent with cases the United States Supreme Court decided prior to *Thomas.* Our Supreme Court in *Thomas* was aware of these federal decisions, and construed them to support its holding that face-to-face confrontation is not required by the federal constitution if the other elements protected by the Confrontation Clause are present, and the denial of face-to-face confrontation furthers an important public policy. 2016-NMSC-024, ¶¶ 26-29.

**{6}** We are bound by our Supreme Court's decision. "It is axiomatic that our justice system requires strict adherence to vertical stare decisis, which is the principle that lower courts are bound by the precedent of reviewing courts." *State v. Mares*, 2024-NMSC-002, ¶ 33, 543 P.3d 1198. "The essence of vertical stare decisis is that absent a formal overruling, Supreme Court decisions remain indefeasibly binding on all inferior tribunals; finding a precedent to be controlling brings the inquiry to its end." *Id.* (text only) (citation omitted). Of particular relevance here, this Court is required to follow controlling precedent from our Supreme Court even when a party argues that such precedent conflicts with a decision of the United States Supreme Court. *Id.* ¶ 34. Because *Thomas* "directly control[s] the issue[s] in the case at bar," we may not depart from Supreme Court precedent. *Mares*, 2024-NMSC-002, ¶ 41. We therefore do not consider this question further.

**II.     Defendant Did Not Preserve His Claim That He Was Entitled to an Opportunity to Recross-Examine Child Under Any Legal Theory**

**{7}** During Child's videotaped deposition, Child disclosed that she had written down the answers to some of the questions she was asked during her preparation for her videotaped deposition a few weeks earlier. This writing, provided to the defense after Child's videotaped trial deposition was completed, omitted mention of one of the crimes described during Child's testimony, and was found by the district court to be a prior inconsistent statement. Defendant claims on appeal that the late disclosure by the prosecution of Child's written statement violated (1) the prosecution's obligation to produce exculpatory evidence, as required by *Brady*; (2) the requirements of Rules 5-501 and 5-505 that prior statements of a witness be disclosed to the defense; and (3) Defendant's right to cross-examine the witnesses against him under the Confrontation Clause. Our review of the record shows that Defendant failed to preserve these arguments, with the possible exception of the remedy for a Rule 5-501(A)(5) violation, and on that issue, the district court did not abuse its discretion.

**A.     Discovery Rule 5-501(A)(5)**

**{8}** Defendant claims that reversal is required because the district court's remedy for the State's discovery violation under Rule 5-501(A)(5) was inadequate, failing to cure the prejudice he suffered from late disclosure of Child's written statement. Defendant made a successful Rule 5-501(A)(5) argument. He appeals only the adequacy of the remedy the district court granted for the late disclosure of Child's statement by the prosecution.

**{9}** At a pretrial hearing, the district court ruled that the writing at issue was a "statement" subject to disclosure by the prosecution under Rule 5-501(A)(5) and that Defendant had been prejudiced by the State's failure to produce Child's statement prior to her trial deposition. As the remedy, the district court announced that it would allow Defendant to introduce Child's statement for purposes of impeachment, either using a foundational witness, or by stipulation, and would instruct the jury that they could consider the statement to impeach Child's credibility.

**{10}** Defendant made no objection to the court's proposal and did not ask for any additional remedy. Defendant introduced the statement at trial, the court gave the instruction to the jury, and defense counsel relied on Child's written statement in his closing argument to question Child's credibility. At no time during the discussion of the remedy with the district court or during trial did Defendant alert the court that its ruling was an inadequate remedy to cure the Rule 5-501(A)(5) discovery violation—as he now argues on appeal. *See Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 ("In order to preserve an issue for appeal, [the d]efendant must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon."). Moreover, even if this argument was preserved for review (admittedly a close question), we review the remedy for a Rule 5-501(A)(5) discovery violation for abuse of discretion. The remedy offered by the district court was reasonable and gave Defendant most, if not all, of what he reasonably could achieve in recross-examination.

## B. The Alleged *Brady* Violation

**{11}** Defendant argues extensively in his brief on appeal that the district court erred in failing to find that Defendant's due process rights to disclosure under *Brady* of exculpatory material were violated by the late disclosure of Child's writing. Our review of the record, however, shows that this issue was not preserved for our review. Defendant never developed this rather complex argument in the district court, either in writing or at the hearing held by the court, and never invoked a ruling from the court on this issue. *See State v. Martinez*, 2021-NMSC-002, ¶ 31, 478 P.3d 880 (stating that an "informed decision" on a constitutional issue could not be reached because the defendant "did not . . . adequately preserve or develop [the] argument at the suppression hearing, failing to invoke a ruling on or otherwise pursue the issue" (internal quotation marks and citation omitted)).

**{12}** Defendant suggests that his *Brady* argument was preserved by his motion requesting production of Child's writing by the prosecution shortly before trial—a motion subsequently withdrawn, and replaced by a corrected motion. In the original motion, Defendant argued that the State might have violated Defendant's due process rights under *Brady* or *Giglio v. United States*, 405 U.S. 150 (1972), if Child's statement, when produced, proved to be material and exculpatory. Defendant also argued the State violated Rule 5-501(A)(5)'s requirement for production of any statements made by a witness. The *Brady* argument was not renewed in the corrected motion. Defendant relied exclusively on his Rule 5-501(A)(5) argument and did not argue the *Brady* factors he now raises in his brief on appeal.

**{13}** At the hearing held by the district court on the motion, the sole issue addressed by Defendant was the alleged Rule 5-501(A)(5) violation. Defendant made no mention of a *Brady* violation, provided no argument on a *Brady* violation, and did not ask the district court to rule on a *Brady* violation. "'To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked.'" *See State v. Ortiz*, 2023-NMSC-026, ¶ 23, 539 P.3d 262 (quoting Rule 12-321(A) NMRA). That requirement was not met here. As we have already discussed, Defendant accepted the remedy offered by the district court, without objection, and without raising the claim he now makes on appeal, that *Brady* requires dismissal and the court's remedy was, therefore, inadequate.

**{14}** Defendant, in his appellate brief, anticipates this Court's ruling that his *Brady* claim was not preserved, and claims that we should review for fundamental error. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Castillo*, 2011-NMCA-046, ¶ 29, 149 N.M. 536, 252 P.3d 760 (internal quotation marks and citation omitted). Defendant cites no authority and fails to provide any discussion of the facts or the law in support of his fundamental error claim. We therefore decline to review for fundamental error. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (noting that appellate courts have no obligation to review unclear or undeveloped arguments).

## C. Confrontation Clause

**{15}** Defendant argues that the district court violated the Confrontation Clause by not allowing him to recross-examine Child with her written statement. Much of Defendant's arguments on both the preservation and the merits of this claim relies on his challenge to the district court's decision to allow Child's testimony to be taken by videotaped deposition, addressed previously in this opinion. Defendant additionally argues that the district court violated his right to confrontation by providing an alternative remedy, when confrontation by recross-examination was mandatory.

**{16}** Defendant did not preserve this issue for appeal. Defendant never argued to the district court that failing to allow him to recross-examine Child would result in a violation of his right to confrontation. It is well established that a party must invoke a ruling of the district court "on the same grounds argued in the appellate court." *State v. Ortiz*, 2009-

NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (internal quotation marks and citation omitted).

**{17}**     Defendant does not claim that he mentioned the Confrontation Clause, or drew the district court's attention to any Confrontation Clause argument in his motion concerning Child's prior inconsistent statement, at the hearing addressing that statement, or in response to the court granting a remedy that did not provide for additional cross-examination of Child. *See State v. Silva*, 2008-NMSC-051, ¶ 10, 144 N.M. 815, 192 P.3d 1192 ("[I]f defense counsel meant to characterize his objections as a Sixth Amendment issue at trial, it was not done with sufficient specificity to call the trial court's attention to the matter complained of, and therefore was not preserved as such."). We, therefore, decline to address the issue further.

### III.     Double Jeopardy

**{18}**     Defendant argues that his convictions of CSPM and CSCM violate his right to be free from double jeopardy. We agree.

### A.     Standard of Review

**{19}**     We apply a de novo standard of review to a double jeopardy claim. *See State v. Cummings*, 2018-NMCA-055, ¶ 6, 425 P.3d 745. The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects against "multiple punishments for the same offense." *State v. Sena*, 2020-NMSC-011, ¶ 44, 470 P.3d 227 (internal quotation marks and citation omitted).

### B.     Defendant's Double Description Claim

**{20}**     Defendant raises what is known as a double description claim. A double description violation occurs when an individual is convicted of more than one offense under different statutes for a single act or course of conduct. *See State v. Vigil*, 2021-NMCA-024, ¶ 17, 489 P.3d 974. Defendant argues that he was convicted of both CSPM and CSCM based on the same course of conduct.

**{21}**     Double description claims are subject to the two-part test adopted by our Supreme Court in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "The first part [of the test] focuses on the conduct and asks whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates multiple statutes." *Sena*, 2020-NMSC-011, ¶ 45 (alteration, internal quotation marks, and citation omitted). If we conclude the same conduct violates multiple statutes, we then proceed to the second step, which requires us to determine legislative intent. We conclude that the evidence at trial does not establish that Defendant engaged in two acts, separated by sufficient indicia of distinctness, and because the Legislature did not intend these unitary acts to be punished separately, we conclude that Defendant cannot be punished separately for each offense.

**C. Defendant's Conduct in Committing CSPM and CSCM Was Unitary**

**{22}** In determining whether Defendant's conduct was unitary, we must determine whether the two offenses the jury found Defendant committed were separated by "sufficient indicia of distinctness." *Id.* ¶ 46 (internal quotation marks and citation omitted). In other words, we look to whether Defendant's conduct, which supported his conviction of CSPM, and his conduct, which supported his conviction of CSCM, was sufficiently distinct to avoid a double jeopardy violation. We turn to the six factors identified in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624, to answer this question. *See State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51. The *Herron* factors include: "(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by [their] conduct and utterances, and (6) the number of victims." *Id.* ¶ 12.

**{23}** In evaluating these factors, we look to "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Id.* ¶ 38 (internal quotation marks and citation omitted). "[N]o *Herron* factor is dispositive, but instead . . . all factors should be considered together in light of the facts and circumstances of each case." *Id.* ¶ 13. We begin with the instructions given the jury. The jury was instructed that to convict Defendant of CSPM, it must find that the State has proved, beyond a reasonable doubt, that "[D]efendant caused [Child] to engage in cunnilingus." Cunnilingus was defined in the jury instructions as "the touching of the edge or inside of the female sex organ with the lips or tongue." To convict Defendant of CSCM, the jury was instructed it must find that the State has proved, beyond a reasonable doubt, that "[D]efendant touched or applied force to the unclothed vulva of [Child] with his finger(s)."

**{24}** Here, Child testified that "[Defendant] would lick [her] vagina and also touch it." Child testified that the acts happened on the "same day." When asked whether the licking and touching happened at the same time, Child responded, "No . . . he first licked it then touched it after." Child further testified that both acts occurred while she lay on her back on the bottom bunk bed in her bedroom, after Defendant removed her clothes from the waist down. Her body position and the extent to which she was unclothed was "the same" for both acts. There was no evidence that Defendant's intent changed during these two acts.

**{25}** Based on Child's testimony, which was the sole evidence in the record describing Defendant's conduct, the *Herron* factors weigh heavily in Defendant's favor. The facts suggest that the episode was brief, there was no movement to a different place or area, Child was not repositioned between offenses, there was no intervening event, the same body part was involved in the touching and licking, Defendant's intent did not change, and there was a single victim.

**D. The Legislature Did Not Intend Multiple Punishments for the Unitary Conduct Supporting the Separate CSPM and CSCM Convictions**

**{26}** Having determined that the conduct relied on to convict Defendant of the two offenses was unitary, we proceed to the second *Swafford* prong: "[W]hether the Legislature intended to create separately punishable offenses." *State v. Reed*, 2022-NMCA-025, ¶ 8, 510 P.3d 1261 (text only) (citation omitted). To determine whether the Legislature intended to create separately punishable offenses under these circumstances, we generally engage in a modified analysis under *Blockburger v. United States*, 284 U.S. 299 (1932). This Court has previously held in *State v. Mora*, 2003-NMCA-072, ¶ 22, 133 N.M. 746, 69 P.3d 256, that CSCM and CSPM "cannot be characterized as lesser included and greater-inclusive crimes because they each contain different elements and stand independently in relation to one another."

**{27}** This conclusion creates a presumption that these are separate offenses and therefore the Legislature intended to authorize separate punishments. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 48, 150 N.M. 232, 258 P.3d 1024; *State v. Swick*, 2012-NMSC-018, ¶ 13, 279 P.3d 747. This Court in *Mora* determined that, even if such a presumption arose, unitary conduct cannot support separate convictions under the CSCM and CSPM statutes. *See* 2003-NMCA-072, ¶¶ 22-27.[1] Our conclusion was based on the identical purposes of the two statutes (to protect children's "bodily integrity and personal safety"), as well as the significantly greater punishment for CSPM than CSCM. *Id.* ¶ 24. We additionally noted that it is common for CSCM and CSPM statutes to be violated together and for those violations to involve the same intimate part. *See id.* ¶ 22. As stated in *Mora*, "We do not believe the [L]egislature has manifested any clear intent that a defendant could be convicted for attempted CSPM and CSCM for unitary conduct. To the contrary, the canons of construction, found in *Swafford*, demonstrate a legislative intent to disallow multiple punishment in this context." *Id.* ¶ 27. Under these circumstances, "lenity is indicated"; we "presume[] the [L]egislature did not intend pyramiding punishments for the same unitary conduct." *Id.* ¶ 23. The Double Jeopardy Clause demands that Defendant's conviction for CSCM, the lesser offense, be vacated.

**CONCLUSION**

**{28}** We affirm Defendant's conviction of CSPM, vacate his conviction for CSCM, and remand for resentencing.

**{29}** **IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

---

1Although *Mora* involved an attempted CSPM, our legislative intent analysis was based on the CSCM and CSPM statutes and did not depend on the fact that the penetration was not completed. See 2003-NMCA-072, ¶¶ 23-27. We thus conclude *Mora* controls here.

**KATHERINE A. WRAY, Judge**