837 P.2d 459

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Rodolfo RODRIGUEZ, Defendant– Appellant.**

**No. 12626.**

Court of Appeals of New Mexico.

July 28, 1992.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

OPINION

MINZNER, Judge.

Rodriguez appeals his convictions of two counts of criminal sexual penetration of a minor (hereinafter "F." or "the child"), con-

trary to NMSA 1978, Section 30–9–11(A)(1) (Cum.Supp.1991). He contends that the procedure for taking the child's testimony when she collapsed outside the courtroom upon being called to testify denied him his right to notice and a hearing as required by statute, his right to confront witnesses, his right to be present at his trial, his right to an open trial, his right to counsel, and his right to an interpreter. Rodriguez also contends that the procedures adopted denied him due process.

Rodriguez has argued in effect that NMSA 1978, Section 30–9–17 (Repl.Pamp.1984) and SCRA 1986, 5–504 (Cum.Supp.1991) control, that the trial court adopted procedures not provided for by either the statute or the rule, and that the procedures adopted denied him rights guaranteed by the Fifth and Sixth Amendments of the United States Constitution. We conclude that the procedures adopted denied Rodriguez his constitutional right to be present in the courtroom, and accordingly do not discuss the other issues. We reverse and remand.

## I.

On the first day of trial, the child was called to testify as the State's first witness. After several minutes' delay, the prosecutor approached the bench and advised the court that the "witness had collapsed on the verge of a nervous breakdown." The prosecutor asked for a recess or, in the alternative, to depose F. by videotape so she would not have to confront Rodriguez. The State proposed that the witness be examined in order to determine whether or not she was capable of testifying in his presence. If not, the State proposed that the courtroom be cleared of everyone but the child, the judge, the court reporter, counsel, and the jury, while Rodriguez, with members of the public in another room, watched her testify on closed circuit television.

Rodriguez objected to the procedure as denying him his right to confrontation. He specifically objected to his removal from the presence of the jury. He also objected that there had been no evidence prior to

trial that the witness would be unable to testify in his presence, since she had been in almost daily contact with him when she visited her mother. In addition, Rodriguez suggested that the child was not competent to testify and moved for a mistrial. He suggested that if the State wished to take the child's deposition pursuant to Section 30–9–17 and Rule 5–504, it should proceed by motion after the trial court had granted Rodriguez's motion for a mistrial. The trial court then called for a conference in chambers.

In chambers, F. was hysterical. Sobbing, she repeatedly said that she was scared. The trial court ordered an examination by F.'s counselor, a clinical psychologist. After taking the psychologist's testimony outside the presence of the jury and allowing Rodriguez an opportunity to cross-examine, the court found that the child was demonstrably harmed by the prospect of testifying in Rodriguez's presence and that the emotional distress was not de minimus.

The trial court then ordered that the courtroom would be cleared of everyone but the court, the court reporter, F., counsel, and the jury. Rodriguez would watch the live testimony, along with his interpreter, in a secretary's office via closed circuit television. The testimony would also be videotaped to preserve a record. Any members of the public who wanted to watch the testimony could also watch in the secretary's office. The court and defense counsel, after discussion, agreed that constant communication between counsel and defendant would not be necessary and that a lengthy recess would be taken between direct and cross-examination to facilitate effective cross-examination.

Although the child attempted to testify in the cleared courtroom that afternoon, she broke down several times. Finally, after about twenty minutes of testimony, the court recessed the trial for the day.

The next day Rodriguez renewed his objection to his exclusion from the child's presence and presented further extended argument on issues we do not address. The court again overruled all of Rodri-

guez's objections to the procedure. F. then continued her testimony in court while Rodriguez watched, along with members of the public, from a monitor in the secretary's office.

## II.

■ The right to be present in the courtroom during one's trial is protected by the Sixth Amendment's confrontation clause, *see Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970), which applies to the states under the Fourteenth Amendment's due process clause. *State v. Garcia,* 95 N.M. 246, 249–50, 620 P.2d 1271, 1274–75 (1980). "This right has been incorporated into our rules of criminal procedure for the district courts, specifically SCRA 1986, 5–612(A), which requires the defendant's presence 'at every stage of the trial.'" *State v. Clements,* 108 N.M. 13, 17, 765 P.2d 1195, 1199 (Ct.App.1988). The State concedes in its supplemental brief that Rodriguez did not knowingly and voluntarily waive his right to be present. We conclude that the procedures adopted by the trial court deprived Rodriguez of his constitutional right to be present. *See State v. Hudson,* 119 N.J. 165, 574 A.2d 434 (1990).

We recognize that the trial court admonished the jury not to hold against Rodriguez the manner in which F.'s testimony was being taken. The trial court was clearly making a thoughtful effort to make the best out of a difficult situation. Nevertheless, in the absence of necessity or the defendant's consent, testimony should not be presented to the jury in the defendant's absence. In this case, there was no necessity for Rodriguez to be outside the courtroom because F.'s testimony could have been conducted with F. in the other room or by deposing her during trial. The jury could then have been shown a videotape of the deposition.

The State contends that the impact of Rodriguez's presence at the trial outweighed his right to be present, making it "exceedingly difficult or wholly impossible to carry on the trial" within the holding in *Allen. See id.,* 397 U.S. at 338, 90 S.Ct. at 1058. Unlike the defendant in *Allen,* however, Rodriguez did not deliberately disrupt his trial, and the findings the trial court made in this case do not support a conclusion that Rodriguez did or said anything at trial that could be said to have been the equivalent.

As for consent, the New Jersey Supreme Court has concluded that:

[I]f the child fears only the defendant, the trial court should order the use of a procedure in which the child testifies outside the courtroom unless defendant requests that the child testify before the jury. In that event, defendant should be informed of the possible adverse consequences of such a procedure, namely, that he or she could not be present in the courtroom during the child's testimony and that he or she would be required to waive the right of presence. In essence, to insist that the child testify before the jury, a defendant must execute a knowing and intelligent waiver of the right to be present.

*State v. Crandall,* 120 N.J. 649, 577 A.2d 483, 487 (1990) (citing *State v. Hudson*). Here, Rodriguez was not given that choice.

The Rhode Island Supreme Court has suggested that videotaped testimony or closed-circuit television viewing does not violate a defendant's right to a fair trial, because a jury might reasonably suppose that there were a number of reasons a child was unable to make a live court appearance. *See State v. Taylor,* 562 A.2d 445, 455–56 (R.I.1989). The court notes that "the jury may suppose that the child had moved from the area, was sick, or was traumatized by the occurrence and so was unable to testify in a public setting." *Id.* at 455. Live-court testimony in a defendant's absence is less susceptible to neutral inferences. Rodriguez's exclusion from the courtroom while F. testified created a substantial risk that the jury would assume that the trial court believed that Rodriguez had engaged in misconduct necessitating his absence from the courtroom.

■ The State contends that the trial court's decision is affirmable under the standards articulated in *Clements,* in which

this court held that "a court may exercise its discretion to proceed *in absentia* only when the public interest is clearly persuasive." *Id.,* 108 N.M. at 18, 765 P.2d at 1200. "In exercising that discretion, the trial court must examine a 'complex of issues' or, as we term them, a number of relevant factors." *Id.* We disagree. Those factors were to be applied only when the defendant was absent from trial voluntarily, *see, e.g., United States v. Fontanez,* 878 F.2d 33, 37 (2d Cir.1989); *see also United States v. Toliver,* 541 F.2d 958, 964 (2d Cir.1976), which is not the situation before us. The State also contends that this court sustained a similar procedure in *State v. Benny E.,* 110 N.M. 237, 794 P.2d 380 (Ct.App.1990). We note that *Benny E.* did not involve a jury trial and that this issue was not raised on appeal. We conclude that it does not support affirmance.

■ The exclusion of the defendant from the courtroom while crucial testimony is being presented may well be the sort of structural defect, such as total deprivation of the right to counsel or the right to a public trial, which is not subject to harmless-error analysis. *See Arizona v. Fulminante,* —— U.S. ——, ——, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991) (opinion for Court of Chief Justice Rehnquist); *cf. Snyder v. Massachusetts,* 291 U.S. 97, 116–18, 54 S.Ct. 330, 336–37, 78 L.Ed. 674 (1934) (defendant's exclusion from jury view of crime scene held harmless error when the facts were viewed in their entirety). In any event, we will not presume that an instruction such as that given here can cure the potential prejudice. This court said in *Clements* that once the defendant

was no longer voluntarily absent from his trial, the state "had the burden of demonstrating beyond a reasonable doubt that conducting the trial during defendant's absence would be harmless." *Id.,* 108 N.M. at 19, 765 P.2d at 1201 (citing *United States v. Toliver*). This the State failed to do. *State v. Clements; see also United States v. Fontanez,* 878 F.2d at 37–38 (read-back of testimony and giving deadlocked jury additional instruction); *cf. United States v. Toliver,* 541 F.2d at 964–66 (one witness held non-crucial; crucial witness recalled to testify in the defendant's presence).

### III.

Special procedures adopted by the trial court to facilitate the testimony of child witnesses and protect them from unnecessary harm implicate a number of constitutional· rights guaranteed to a defendant. In this case, the procedures adopted denied Rodriguez his right to be present in the courtroom. We need not discuss the other rights on which he relies. For this reason, Rodriguez's convictions are reversed, and the cause is remanded for a new trial.

IT IS SO ORDERED.

HARTZ and PICKARD, JJ., concur.