863 P.2d 1077

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Tom FAIRWEATHER, Defendant–Appellant.**

**No. 21070.**

Supreme Court of New Mexico.

Oct. 28, 1993.

Tom Udall, Atty. Gen. and Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender and Sheila Lewis, Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

FROST, Justice.

In this opinion, we once again address the admissibility of expert opinion testimony regarding post traumatic stress disorder (PTSD) pertaining to victims of sexual abuse. We accepted certification of this case from the Court of Appeals to review the defendant's appeal in light of our recent opinion in *State v. Alberico*, 116 N.M. 151, 861 P.2d 192 (1993). We continue to be persuaded by the scientific validity of PTSD evidence.[1] On the basis of the limitations upon the use of PTSD evidence that we outlined in *Alberico*, however, we reverse the defendant's conviction and remand this case to the district court for a new trial.

### FACTS

Tom Fairweather was convicted of eight counts of criminal sexual contact of a minor, two counts of criminal sexual penetration of a minor, and two counts of kidnapping. The alleged victims of Fairweather's sexual abuse were his two sons who were aged four and six at the time of the alleged abuse.

### Testimony at Trial

At trial, the State introduced the testimony of a clinical psychologist, Dr. Barbara Lenssen. Her qualifications were not challenged. The district attorney's office had engaged Dr. Lenssen to evaluate the credibility and competency of the two boys before trial. The purpose of her testimony at trial, however, was not made clear.

Dr. Lenssen testified that she diagnosed the boys as suffering from PTSD consistent with sexual abuse. She recounted some of the symptoms that she observed in the boys. As a basis for her diagnosis, Dr. Lenssen stated that she interviewed the children and spent about three hours with each of them, met with their therapist and their mother, and viewed a videotaped interview of the boys by an investigator from the district attorney's office. Dr. Lenssen also repeated several of the statements that the boys made to her during her evaluation to the effect that Fairweather sexually abused them, including oral sex and anal penetration.

Dr. Lenssen also testified about the boys' credibility. She discriminated between a statement by one of the boys that she believed was truthful and another statement which she believed was contrived. Characterizing one of the boys' statements, Dr. Lenssen stated that it "seemed to be very factual." She also testified that the boys' statements to her were "internally consistent" in that they had reported the same things to different people. Dr. Lenssen did acknowledge, however, that she made no independent investigation of the internal consistency of the children's statements because she considered their mother to be a reliable source and because her diagnosis of PTSD "fit in" very well. On redirect examination, the prosecution asked her whether children sometimes lied about or fabricated accusations. She responded that sex acts are not within the normal realm of experience of children and that they are not good liars.

In response to a question by the prosecution on direct examination, Dr. Lenssen also testified that the sexual abuse that the boys experienced was the direct cause of their PTSD symptoms. As to one of the boys, she concluded that his PTSD was a result of the "sexual abuse which he has reported happened to him."

1. The Supreme Court of South Carolina recently overruled its opinion in *State v. Hudnall*, 293 S.C. 97, 359 S.E.2d 59 (1987), in which it had prohibited the admission of PTSD evidence. *See State v. Schumpert*, 435 S.E.2d 859 (S.C. 1993).

Dr. David Burke also testified during the State's case-in-chief. He was qualified as a medical doctor with a specialty in child and adolescent psychiatry without objection from the defense. He had treated the boys and had prescribed ritalin for each of them. Dr. Burke agreed with Dr. Lenssen's diagnosis of PTSD and testified that it was caused by the sexual abuse that each of the boys had experienced. He also testified that the boys told him that they were molested by their father.

### Motion in Limine

Before trial, Fairweather joined in a co-defendant's motion in limine to exclude any testimony regarding PTSD at trial. In their motion to exclude PTSD evidence, the defendants based their objection upon the technique's scientific unreliability and its failure to meet the *Frye* test. The motion also addressed the expert's improper bolstering of the complainants' credibility and claimed that the prejudicial effect of the testimony would outweigh its probative value.

At the hearing on the motion in limine, Dr. Ned Siegel, a clinical psychologist, testified for the defense. He explained the background of and the theoretical basis for PTSD. He also pointed out that the cautionary statement in the *Diagnostic & Statistical Manual of Mental Disorders* (3d rev. ed. 1987) ("DSM III–R"), which the American Psychiatric Association published, warned that the use of clinical terms "may not be relevant ... for a legal setting." He analogized the use of DSM III–R criteria in court for the purpose of showing that a crime had taken place to fitting a square peg into a round hole. Dr. Siegel did acknowledge, however, that the cautionary statement in DSM III–R implicitly recognized that disorders like PTSD would be discussed in a forensic setting such as a criminal trial, and he conceded that DSM III–R did not rule out the use of its classification and diagnostic criteria in the courtroom.

Dr. Siegel testified that there are no unique reactions for different stressors, thus making it difficult to pinpoint the cause of the symptoms. He explained that stressors have a cumulative effect. He also claimed that it is more difficult to identify the stressor in children than in adults. Dr. Siegel pointed out that psychologists are trained to accept the statements of alleged victims and not to evaluate their credibility. He did not contest Dr. Lenssen's diagnosis of PTSD in the two boys.

During argument on the motion in limine, the prosecution stated that the PTSD testimony would not be offered to prove the veracity of the boys' testimony or to show that sexual abuse had occurred. According to the prosecution, its purpose was to explain certain post incident behaviors of the children. The defense argued that the jury could evaluate the boys' behavior and their credibility without the aid of expert testimony. The trial court did not make a specific ruling on the motion in limine.

### ISSUES

Fairweather argues that even though the State conceded that PTSD evidence was not admissible as to the truthfulness of the two boys, that is exactly the purpose for which the State offered the expert testimony at trial, which constituted reversible error. We agree. Fairweather also raises other issues that we deem necessary to address as they will undoubtedly resurface if he is tried again.[2] He argues that the boys' competency to testify was not established, that he was denied his right to confront witnesses by the use of a videotaped deposition, and that the trial court failed to instruct the jury on an essential element of the crimes charged. Fairweather raises additional issues that we deem to be without merit, and thus it is unnecessary to address them.

### DISCUSSION

■ According to the State, the purpose of Dr. Lenssen's evaluation was to deter-

---

**2.** This Court's jurisdiction under a Section 34–5–14(C) certification from the Court of Appeals extends to the entire case that was before the Court of Appeals. *See* NMSA 1978, § 34–5–14(C) (Repl.Pamp.1990); *Collins v. Tabet*, 111 N.M. 391, 404 n. 10, 806 P.2d 40, 53 n. 10 (1991).

mine the competency of the two children. At trial, however, the actual topic of the expert testimony was whether the children were sexually abused and whether they were telling the truth, not whether they were competent to testify.[3]

### Admission of PTSD Testimony

■ When the State offered Dr. Lenssen's testimony at trial for the purpose of determining the credibility of the children, defense counsel objected, and the trial judge properly admonished the State that evidence as to the boys' truthfulness was improper. On the pretext of offering evidence as to the boys' competency to testify, however, the State actually examined Dr. Lenssen about the credibility of the two boys.

In response to Fairweather's motion for a mistrial on grounds not related to PTSD evidence, the trial judge noted that Dr. Lenssen had gone beyond the issue of the boys' competency and had "exceeded the bounds of anything I've seen," apparently referring to the issue of credibility. Yet the trial judge made no ruling on Dr. Lenssen's testimony, and trial counsel apparently did not press him for one.

The State argues on appeal that Dr. Lenssen was engaged to determine the competency of the boys to testify and that the purpose of her testimony at trial was to educate the jury concerning the boys' abnormal behavior. It may be that an expert can testify pretrial as to a minor witness's competency to testify to establish that witness's ability to discriminate between reality and fantasy. It is quite another situation to allow an expert to offer an opinion to the jury as to whether the minor witness is telling the truth, which is what the State did here. In *Alberico*, we specifically disallowed expert testimony on the veracity of a

minor who complained of sexual abuse. We held that, "While PTSD testimony may be offered to show that the victim suffers from symptoms that are consistent with sexual abuse, it may not be offered to establish that the alleged victim is telling the truth; that is for the jury to decide." *Alberico*, 116 N.M. at 169, 861 P.2d at 210.

■ We also recognized in *Alberico* that PTSD evidence may be offered to disabuse the jury of commonly held but mistaken beliefs about an alleged rape victim's post incident behavior. For the testimony to be admissible for that purpose, however, the defense must have made the complainant's post incident behavior an issue, and the defense did not do so here. *See id.* at 171, 861 P.2d at 212; *State v. Newman*, 109 N.M. 263, 266, 784 P.2d 1006, 1009 (Ct. App.) (allowing introduction of PTSD evidence to assist jury in understanding behavior of sexually abused children when defense had made behavior of complainant an issue), *cert. denied*, 109 N.M. 262, 784 P.2d 1005 (1989).

Furthermore, psychologists do not pretend to be able to evaluate a person's truthfulness and "allowing the psychologist to testify as to the identity of the accused serves only to repeat what the complainant told the examining expert and thus bolster her credibility." *Alberico*, 116 N.M. at 170, 861 P.2d at 211. In addition, "the expert may not testify that the victim's PTSD symptoms were in fact caused by sexual abuse. This again vouches too much for the credibility of the victim and encroaches too far upon the province of the jury to determine the truthfulness of the witnesses." *Id.* at 171, 861 P.2d at 212. As we held in *Alberico*, it is not scientifically valid, or at least it does not appear from the record here to be scientifically valid under SCRA 1986, 11–702, that a psychologist can

---

**3.** While this may not be the case to address this issue fully, we note that the better practice for a determination of whether a witness is competent to testify at trial under SCRA 1986, 11–601, especially when expert testimony is offered, is prior to trial or out of the hearing of the jury pursuant to SCRA 1986, 11–104. *See, e.g., State v. Noble*, 90 N.M. 360, 363, 563 P.2d 1153, 1156 (1977) (determination of competency of seven-

year-old witness held out of hearing of jury); *State v. Manlove*, 79 N.M. 189, 193, 441 P.2d 229, 233 (Ct.App.) (stating that better practice for determination of child's competency is to hold hearing outside presence of jury), *cert. denied*, 79 N.M. 159, 441 P.2d 57 (1968). This will ensure that the jury does not confuse competency with credibility.

determine that a crime "in fact" occurred. *See id.* at 171, 861 P.2d at 212 (allowing expert to state that crime in fact occurred may breach cardinal rule of science). Thus, the trial court erred in admitting expert testimony as to the complainants' credibility.

### Prejudicial Error

■ The State argues that if the admission of Dr. Lenssen's testimony was error, it was harmless. "Error in the admission of evidence in a criminal trial must be declared prejudicial and not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Clark v. State,* 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991). The admission of the expert testimony in this case was not harmless error. *See Sanchez v. State,* 103 N.M. 25, 27, 702 P.2d 345, 347 (1985) (holding that restriction of defense's cross-examination of expert was reversible error because only other witnesses testifying as to rape were complainant and defendant).

■ One of the elements for finding harmless error is a disproportionate volume of admissible evidence in relation to improper evidence so that the improper evidence appears so miniscule that it could not have contributed to the guilty verdict. *Id.* Here, as in *Sanchez* and in the *Marquez* component of our opinion in *Alberico,* the only witnesses concerning the alleged sexual abuse, other than the experts, were the complainants and the defendant. Fairweather even presented the results of a polygraph examination that he took. Credibility, therefore, was a pivotal issue at trial. Because there is not a disproportionate volume of admissible evidence to sustain the jury's verdict in relation to the expert testimony that we conclude was improper, there is a reasonable possibility that Dr. Lenssen's expert testimony concerning the complainant's truthfulness contributed to Fairweather's conviction.

### Competency to Testify

■ The trial judge found that the two boys were competent to testify after a short hearing out of the presence of the jury. The trial court has the discretion to determine the competency of witnesses. *See State v. Manlove,* 79 N.M. 189, 193, 441 P.2d 229, 233 (Ct.App.) (setting out guidelines for determining competency), *cert. denied,* 79 N.M. 159, 441 P.2d 57 (1968). We will not reverse a trial court's determination as to the competency of witnesses unless it clearly abused its discretion. *State v. Macias,* 110 N.M. 246, 249, 794 P.2d 389, 392 (Ct.App.), *cert. denied,* 110 N.M. 183, 793 P.2d 865 (1990). The elements in a trial court's determination of competency are the extent of the child's abilities for "observation, recollection and communication, and also the child's appreciation or consciousness of a duty to speak the truth." *Manlove,* 79 N.M. at 192, 441 P.2d at 232.

■ Fairweather does not contest the boys' ability to observe, remember, or communicate; he only attacks their capacity for truthfulness. Fairweather seems to argue that because the boys did not appreciate that failing to tell the truth in court meant going to jail, they did not know the difference between telling the truth and lying. A child witness, or any competent witness for that matter, need not know the consequences of perjurious testimony, or even what the term "perjury" means; he or she need only know that lying is wrong. Both of the boys indicated that they were aware that they would be subject to some sort of punishment if they lied. Even though there were inconsistencies in one of the boys' testimony, we do not believe that the trial judge abused his discretion in finding that the boys were conscious of their duty to tell the truth.

### Confrontation Clause

■ At trial, the State offered the complainants' testimony through videotaped depositions pursuant to NMSA 1978, Section 30-9-17 (Repl.Pamp.1984) and SCRA 1986, 5-504 (Repl.Pamp.1992). The depositions were taped prior to trial, and Fairweather was not allowed in the same room with his children, but rather sat in an adja-

cent room out of the presence of the children during the depositions, viewing their testimony on a monitor. His attorney was present at the depositions and was able to cross-examine the boys. Fairweather was not able to speak with his attorney during the depositions, but was able to have messages handed to him. He was also able to meet with his attorney during recesses. Because the trial court allowed the use of the videotaped depositions, Fairweather claims the boys testified outside of his presence and that he was denied his right to confront his accusers.

■ The Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution guarantee a criminal defendant the right to be present at his trial and to confront the witnesses against him face-to-face. *Maryland v. Craig*, 497 U.S. 836, 844, 110 S.Ct. 3157, 3162, 111 L.Ed.2d 666 (1990); *State v. Rodriguez*, 114 N.M. 265, 267, 837 P.2d 459, 461 (Ct.App.1992). The rights that the Confrontation Clause confers, however, are not absolute. *Craig*, 497 U.S. at 844, 110 S.Ct. at 3162. The defendant does not have an absolute right to be present and to confront witnesses against him, and his counsel may be restricted in his interrogation of those witnesses when there is a fair and reasonable substitute therefor. *See State v. Taylor*, 103 N.M. 189, 195, 704 P.2d 443, 449 (Ct.App.1985) (holding that defendant's absence from and defense counsel's restriction to written questions in hearing on competency of child complainant did not violate Confrontation Clause); *But see Rodriguez*, 114 N.M. at 267, 837 P.2d at 461 (holding that defendant's absence from courtroom during child's testimony to jury, instead of presenting videotape of child's testimony to jury with defendant present, violated Confrontation Clause in absence of necessity or defendant's consent).

A face-to-face confrontation is not "an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers," but rather it may "give way to considerations of public policy." *Craig*, 497 U.S. at 849–50, 110 S.Ct. at 3165–66. "There exists a strong public policy, as evidenced by Section 30–9–17 ..., to protect child victims of sexual crimes from the further trauma of in-court testimony. This public policy concern must be considered together with the rights of the accused. The statute and the court procedural rule seek to strike a balance between these competing interests." *State v. Vigil*, 103 N.M. 583, 586, 711 P.2d 28, 31 (Ct.App. 1985) (citation omitted), *habeas corpus denied sub nom. Vigil v. Tansy*, 917 F.2d 1277 (10th Cir.1990), *cert. denied*, 498 U.S. 1100, 111 S.Ct. 995, 112 L.Ed.2d 1078 (1991).

On motion by the State, the trial court allowed the boys to testify outside the presence of their father because it concluded that Fairweather's presence would cause the boys more than minimal psychological harm. The trial judge found that "the individualized consideration and effect on each of the minor witnesses ... would result in emotional trauma and harmful consequences to their emotional and physical well-being were they compelled to testify in open court and in the presence of the defendant here accused." The trial judge based his ruling on the expert testimony of Dr. Burke, who stated that the children would experience unreasonable harm if they testified in their father's presence. Dr. Burke testified that the boys would lose some of the progress that they had made in therapy and would suffer from additional trauma if they were required to testify in front of their father.

It is significant to note that Fairweather does not contest the factual findings of the potential for further harm to the boys as a result of having them testify in open court and in his presence. He claims that the procedure used at trial violated his right of confrontation. The procedure that the trial judge employed here, however, has passed constitutional muster before. For example, in *State v. Tafoya*, 108 N.M. 1, 765 P.2d 1183 (Ct.App.), *cert. denied*, 107 N.M. 785, 765 P.2d 758 (1988) *and* 489 U.S. 1097, 109 S.Ct. 1572, 103 L.Ed.2d 938 (1989), several minor victims of sexual abuse testified by way of videotaped depositions that were

taken out of the presence of the defendant. Counsel for the defense and the State as well as the trial judge were present in the room with the witnesses during the depositions, and each child was subject to cross-examination. *Id.* at 2, 765 P.2d at 1184. The defendant viewed the depositions by television monitor in another room, and he and his attorney were equipped with headsets and microphones for two-way communication. *Id.*

The Court noted that both SCRA 5–504 and Section 30–9–17 require the deposition to be taken in the presence of the defendant, but that both were enacted for the purpose of protecting child victims of sexual abuse from further trauma. *Id.* The requirement for the presence of the defendant notwithstanding, the Court of Appeals held that the procedures adopted by the trial judge in that case served both the public policy of protecting minor victims of sex abuse and the defendant's constitutional right of confrontation. *Id.* at 3, 765 P.2d at 1185.

■ Fairweather argues that the trial judge here failed to make individualized findings regarding each child, but he concedes that the trial judge made specific findings of harm to each boy. We fail to see the difference beyond that of semantics. The reason that a trial judge is required to make individualized findings justifying a deviation from the standard trial procedure of face-to-face confrontation in front of the jury is so that an appellate court may review those findings in determining whether the trial court properly balanced the defendant's Sixth Amendment right and the special need for protection of the child witness. *State v. Benny E.*, 110 N.M. 237, 242, 794 P.2d 380, 385 (Ct.App. 1990). The trial judge here properly balanced Fairweather's right to confront his accusers and the interests of protecting the minor witnesses.

Of the elements that comprise the right of confrontation, Fairweather was denied only a face-to-face encounter. *See Craig,* 497 U.S. at 845–46, 110 S.Ct. at 3163–64 (itemizing elements that comprise rights under Confrontation Clause). His counsel was able to cross-examine the boys, and the jury was able to observe the children's demeanor through the depositions. A face-to-face encounter is "not the *sine qua non* of the confrontation right." *Id.* at 847, 110 S.Ct. at 3164; *see also In re Troy P.*, 114 N.M. 525, 529, 842 P.2d 742, 746 (Ct.App. 1992) (stating that most important element of right to confrontation is cross-examination). Thus, Fairweather was not deprived of his right to confrontation.

■ Fairweather claims further that because he was unable to converse with his trial counsel simultaneously with the questioning of the boys during their videotaped testimony, he was denied effective assistance of counsel as well as his right to confront the witnesses against him. To establish a violation of his right to confront witnesses, the defendant must show that he was prejudiced by his exclusion from the witness's presence or the restriction placed on his counsel. *Taylor,* 103 N.M. at 194, 704 P.2d at 448. Fairweather has not demonstrated any particularized prejudice, however, or rather just exactly how such a restriction prejudiced his defense at trial. The mere assertion of prejudice, without more, is insufficient to establish prejudicial error warranting reversal of a conviction. *See State v. Montoya,* 101 N.M. 424, 426, 684 P.2d 510, 512 (1984).

### Failure to Instruct on the Element of Unlawfulness

■ Finally, Fairweather argues that the trial court failed to instruct the jury on an essential element of the crimes charged—unlawfulness. He claims that this failure to instruct on an essential element constitutes fundamental error pursuant to *State v. Osborne,* 111 N.M. 654, 663, 808 P.2d 624, 633 (1991). Fairweather raises this issue, however, for the first time in his reply brief. We will not address this issue because it is raised for the first time in the reply brief. *Hale v. Basin Motor Co.,* 110 N.M. 314, 321, 795 P.2d 1006, 1013 (1990); SCRA 1986, 12–213(C) (Cum.Supp. 1993). In light of our reversal on other grounds, however, we encourage the trial court to instruct the jury on all of the

**464**

elements of the crimes charged if Fairweather is tried again.

## CONCLUSION

The expert testimony concerning the complainant's veracity here was more than just merely incidental; it was the main subject of the expert testimony, and thus its admission was erroneous under our holding in *Alberico*. Because credibility was the central issue at trial, the error was not harmless. Accordingly, Fairweather's conviction is reversed.

The trial judge did not abuse his discretion, however, in finding that the two boys were competent to testify at trial. There was ample evidence in the record to support the finding that the boys appreciated their duty to tell the truth. The trial judge also did not abuse his discretion in allowing the children to testify by way of depositions that were videotaped outside the presence of the defendant and then shown to the jury. He made the requisite findings of individualized harm to each child witness, and his conclusion was supported by the expert testimony of the boys' treating psychiatrist, Dr. Burke. Thus, there was substantial evidence to support the trial judge's finding that the children would be harmed by testifying in the defendant's presence, and the harm that the children would suffer testifying in his presence outweighed the defendant's right to a face-to-face confrontation with his accusers. *See Tafoya*, 108 N.M. at 4, 765 P.2d at 1186. The trial court's use of the videotaped depositions in this case was consistent with the decisions by the Court of Appeals in *Tafoya* and by the United States Supreme Court in *Maryland v. Craig*.

Last, although we are concerned with the trial court's failure to instruct the jury on the essential element of "unlawfulness," Fairweather did not properly present this issue for review on appeal. He raised the issue for the first time in his reply brief, and thus we will not address it.

The conviction is reversed on the basis that the admission of the expert opinion testimony was reversible error. This case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

RANSOM, C.J., and BACA, MONTGOMERY and FRANCHINI, JJ., concur.