This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40622**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GERARDO MARQUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidmanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Lindsey Law Firm, LLC
Daniel R. Lindsey
Clovis, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     This case arises from the shooting death of Defendant Gerardo Marquez's former girlfriend (Victim), which took place in Portales, New Mexico at the house where Defendant and Victim lived together. Defendant appeals his conviction for second degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994). Defendant argues the district court erred by (1) limiting cross-examination of Defendant's cousin Pedro Peña, who testified for the State, and (2) admitting a video recording of police officers executing a search warrant of Defendant. We affirm.

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural background, we reserve discussion of the pertinent facts within the context of Defendant's arguments.

## DISCUSSION

### I. Limitations on Cross-Examination

**{3}** Defendant argues that the district court erred by improperly limiting cross-examination of Peña in two separate instances. In the first instance, defense counsel sought to elicit details of a burglary Peña had previously committed, and the State objected. A bench conference ensued, and the parties discussed whether, under Rule 11-608 NMRA, the details of the burglary were probative of Peña's character for truthfulness. In sustaining the objection, the district court stated it did not want defense counsel to get into the facts of the burglary, noting that Peña had already admitted to the burglary conviction on direct-examination.

**{4}** Regarding the second instance, after eliciting testimony relating to Peña's use of methamphetamine, defense counsel asked, "Where did you get [the methamphetamine]?" The State objected on relevance grounds. A bench conference ensued, and the parties discussed the relevance of "where [Peña] got the methamphetamine." Defense counsel argued there was another individual who "[they] believe that [Peña] was with, and may be involved with the murder," and that "who [Peña] was with[, and] who he got the drugs from" was relevant. In sustaining the State's objection, the district court ruled that defense counsel could not ask Peña "who he got the drugs from" but could "explore the other areas that [defense counsel] mentioned—who [Peña] was with, etcetera." Cross-examination resumed, and defense counsel asked Peña when he bought the methamphetamine (Peña responded that he already had it) and whether the person who sold Peña the drug was present with Peña when he heard the gunshot (Peña responded in the negative). Defense counsel then told the district court, "Judge, I think the person's name is relevant at this point." The State again objected, and the district court sustained the objection, stating that the court's "ruling will stand." Defense counsel then asked Peña whether the seller was in Portales, and Peña responded that he believed he purchased the methamphetamine in Clovis the night before he traveled to Portales.

**{5}** Defendant contends these two rulings limiting cross-examination of Peña constituted an abuse of discretion and violated the Confrontation Clause. We examine these arguments in turn.

### A. Abuse of Discretion

**{6}** Defendant has failed to persuade us that either ruling constituted an abuse of discretion. *See State v. Campbell*, 2007-NMCA-051, ¶ 9, 141 N.M. 543, 157 P.3d 722 (stating that the district court abuses its discretion when its ruling is "obviously erroneous, arbitrary and unwarranted," or "clearly against the logic and effect of the

facts and circumstances before the court" (internal quotation marks and citation omitted)); *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 ("There is a presumption of correctness in the district court's rulings. Accordingly, it is [the d]efendant's burden on appeal to demonstrate any claimed error below." (alterations, internal quotation marks, and citation omitted)).

**{7}** To the extent Defendant argues the district court's ruling excluding testimony concerning details of Peña's burglary constituted an abuse of discretion under Rule 11-608(B)(1), Defendant fails to develop an argument around this rule in his brief in chief and in his reply brief asserts only that the details of the burglary were highly probative of Peña's character for truthfulness. *See* Rule 11-608(B)(1) ("[T]he court may, on cross-examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the [witness's] character for truthfulness."). Defendant, however, fails to address the factors this Court analyzes to determine whether a district court's decision under Rule 11-608(B) constitutes an abuse of discretion. *See State v. Patterson*, 2017-NMCA-045, ¶ 11, 395 P.3d 543 (listing five factors that "inform a court's exercise of discretion under Rule 11-608(B)" and stating that "[w]e review the district court's exercise of discretion through the prism of those five factors"). We note, however, that the jury had already heard Peña admit to his burglary conviction, and that the burglary occurred more than fifteen years earlier. *See Patterson*, 2017-NMCA-045, ¶ 11 (listing "the relevancy of the act of misconduct to truthfulness" and "the nearness or remoteness of the misconduct to the time of trial" as two factors informing a court's discretion under Rule 11-608(B) (internal quotation marks and citation omitted)).

**{8}** To the extent Defendant contends the district court abused its discretion in excluding Peña's testimony as irrelevant by relating the name of the individual who sold Peña methamphetamine, Defendant does not cite Rule 11-401 NMRA, much less develop an argument based on the language of this rule. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (recognizing that the appellate court does not review undeveloped arguments). We therefore conclude Defendant has failed to carry his burden of demonstrating these evidentiary rulings constituted an abuse of discretion. *See State v. Trejo*, 1991-NMCA-143, ¶ 7, 113 N.M. 342, 825 P.2d 1252 ("[W]here it is evident that there existed reasons for and against the ruling, we may indulge in the usual appellate presumptions to affirm the [district] court.").

## B. Confrontation Clause

**{9}** Defendant next argues the district court's rulings limiting cross-examination of Peña violated the Confrontation Clause. *See* U.S. Const. amend. VI; *see also Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." (internal quotation marks and citation omitted)). "Although the extent of cross-examination is within the sound discretion of the district court, we . . . review de novo whether limits on cross-examination have violated the Confrontation Clause." *State v. Samora*, 2016-NMSC-031, ¶ 48, 387 P.3d 230. Defendant, however, failed to preserve his Confrontation Clause argument. *See State v. Lucero*, 1986-NMCA-085, ¶ 12, 104 N.M. 587, 725 P.2d

266 ("The issue of denial of the right to confrontation may not be raised for the first time on appeal.").

**{10}** "To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked." Rule 12-321(A) NMRA. Defendant failed to invoke a ruling of the district court on the issue of whether prohibiting defense counsel from inquiring into details of Peña's burglary violated the Confrontation Clause or alert the court to a constitutional error. Rather, following the State's objection, defense counsel argued that Rule 11-608 permitted the inquiry and that the inquiry was probative of Peña's character for truthfulness. *Cf. Lucero*, 1986-NMCA-085, ¶¶ 16-17 (concluding that the confrontation issue was not preserved because the defendant's objection asked for an evidentiary ruling and did not alert the district court to a constitutional error). This argument is thus unpreserved.

**{11}** Regarding the district court's ruling preventing defense counsel from eliciting from Peña the name of the individual who sold him methamphetamine, the State objected on relevancy grounds, the parties discussed at a bench conference whether the information was relevant, and the district court sustained the State's objection. Defense counsel did not invoke a ruling from the district court on the issue of whether the exclusion of this testimony violated the Confrontation Clause or alert the court to a constitutional error. *See id.* This argument is therefore also unpreserved. Thus, we decline to consider this issue and turn to Defendant's next contention.

## II.     Admission of the Video

**{12}** Defendant argues that the district court erred by admitting a two-minute video of police officers executing a search warrant for Defendant's DNA and clothing at the police station (the video). The video shows Defendant resisting the search and the police finding a bullet in his sock. The State argued the video was relevant to show consciousness of guilt. Defense counsel responded that the video did not show consciousness of guilt but rather Defendant's displeasure with police for not providing him with an attorney, which he had requested. The district court agreed with the State and admitted the video. Defendant argues that admission of the video violated his *Miranda* and due process rights. We review each argument in turn.

## A.     Defendant's *Miranda* Rights

**{13}** Defendant argues admission of the video violated his Fifth Amendment *Miranda* rights because, having requested an attorney at the police station, the State was obligated to provide him one before executing the search warrant. Defendant asserts the search "necessitated speaking with . . . [D]efendant . . . and expecting answers." Defendant contends his objection at trial was, in essence, a request for the district court to suppress the video, which showed Defendant's conduct and contained his statements made to police during the search. Even if it were appropriate to review Defendant's objection as a suppression motion, as Defendant suggests, we are unpersuaded of any error.

**{14}** "The district court's denial of [a d]efendant's motion to suppress evidence presents a mixed question of fact and law." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. "This Court reviews factual matters with deference to the district court's findings if substantial evidence exists to support them, and it reviews the district court's application of the law de novo." *Id.* "Suppression of an accused's statements made to a law enforcement officer prior to the giving of *Miranda* warnings is only required when the statements are the product of a custodial interrogation." *State v. Fekete*, 1995-NMSC-049, ¶ 41, 120 N.M. 290, 901 P.2d 708; *see also State v. Quiñones*, 2011-NMCA-018, ¶ 10, 149 N.M. 294, 248 P.3d 336 (stating that "when an accused has invoked his right to have counsel present during a custodial interrogation," the accused "is not subject to further interrogation by the authorities until counsel has been made available to him" (alterations, internal quotation marks, and citations omitted)). "The threshold inquiry when a defendant alleges a violation of *Miranda* rights is whether there was an interrogation." *Fekete*, 1995-NMSC-049, ¶ 41. "Interrogation occurs when an officer subjects an individual to questioning or circumstances which the officer knows or should know are reasonably likely to elicit incriminating responses." *Id.* (internal quotation marks and citation omitted).

**{15}** As to whether the search constituted an interrogation, Defendant does not cite a specific portion of the video where he contends he was subjected to questioning and fails to cite authority that execution of a search warrant constitutes a circumstance which an officer knows or should know is reasonably likely to elicit incriminating responses. *See id.* Defendant also fails to cite authority to support his argument that he was entitled to an attorney before the police could execute a search warrant. *See State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 ("We will not consider an issue if no authority is cited in support of the issue, because absent cited authority to support an argument, we assume no such authority exists."). We therefore conclude admission of the video did not violate Defendant's *Miranda* rights.

## B. Defendant's Due Process Rights

**{16}** Defendant next argues the district's decision to admit the video violated his due process rights.[1] In support of this argument, Defendant points out that the full-length recording of the search shows Defendant requesting an attorney. Defendant contends his conduct in the video does not demonstrate consciousness of guilt but rather displeasure with police for not providing him with an attorney. Defendant argues he could not defend against this evidence because the only way to disprove the State's narrative would have been to introduce the full video showing him requesting an attorney, thereby impermissibly forcing him to surrender his Fifth Amendment right against self-incrimination. *Cf. State v. McDowell*, 2018-NMSC-008, ¶ 5, 411 P.3d 337 ("[E]liciting testimony or commenting on a defendant's exercise of [their] right to counsel

---

[1]To the extent that the Defendant argues in a single sentence that admission of the video violated the Confrontation Clause, Defendant raises this argument for the first time in his reply brief. *See State v. Fairweather*, 1993-NMSC-065, ¶ 32, 116 N.M. 456, 863 P.2d 1077 (declining to address an issue the defendant raised for the first time in his reply brief); *Guerra*, 2012-NMSC-014, ¶ 21. We therefore decline to address this argument further.

is . . . reversible error."). As a result, Defendant contends he was precluded from presenting evidence providing justification for his refusal to comply with the police, in violation of his due process right to present a defense and contrary to Rule 11-106 NMRA. We conclude that even if we were to assume the district court erroneously admitted the video, any error was harmless.

**{17}** Constitutional error is harmless when there is "no reasonable possibility the error contributed to the jury's decision to convict [the d]efendant." *State v. Tollardo*, 2012-NMSC-008, ¶ 45, 275 P.3d 110; *see also State v. Gutierrez*, 2007-NMSC-033, ¶ 18, 142 N.M. 1, 162 P.3d 156 ("The [s]tate has the burden of establishing that the constitutional error was harmless beyond a reasonable doubt." (internal quotation marks and citation omitted)). In determining whether an error is harmless, we must endeavor to determine the likely effect of the error on the jury's verdict. *See Tollardo*, 2012-NMSC-008, ¶ 43. In conducting our review, we analyze the error on a case-by-case basis, "evaluat[ing] all of the circumstances surrounding the error, including examining the error itself, the source of the error, the emphasis on the error, and whether the error was cumulative or introduced new facts." *State v. Hernandez*, 2017-NMCA-020, ¶ 20, 388 P.3d 1016. Additionally, "evidence of a defendant's guilt separate from the error may often be relevant, even necessary, for a court to consider, since it will provide context for understanding how the error arose and what role it may have played in the trial proceedings." *Tollardo,* 2012-NMSC-008, ¶ 43. Such evidence, however, may not be "the singular focus of the harmless error analysis." *Id.*

**{18}** Here, the State was the source of the alleged error, having sought to introduce the video. The State also placed at least some emphasis on the video, noting in its closing argument that the video showed Defendant resisting the search. Nevertheless, separate from the video, the jury heard evidence that Defendant resisted the search through the testimony of a police officer who participated in the search. *See Hernandez*, 2017-NMCA-020, ¶ 20 (considering whether the error was cumulative or introduced new facts). The officer testified that Defendant refused to cooperate with the search, stating that Defendant would not open his mouth for a DNA swab, did not cooperate in the search of his clothing, and that officers ultimately had to cut off Defendant's shirt using scissors.

**{19}** Moreover, the State introduced the video showing Defendant resisting the search to demonstrate consciousness of guilt, but the jury received additional evidence demonstrating Defendant's consciousness of guilt from other sources. *See id.* A police officer who participated in the search testified that during the search Defendant stated that he "wasn't gonna give us a fucking thing." The jury also heard testimony that in a recording of a call Defendant made from jail several days after the shooting, Defendant stated, "I fucked up. I fucked up bad." And on the day of the shooting, Defendant, who lived with Victim in Portales and had children living there, traveled to Clovis, where he stayed that night in a hotel.

**{20}** Finally, evidence of Defendant's guilt separate from the alleged error was substantial. The jury heard testimony that Defendant possessed a motive to commit the

crime and was with Victim at the house where the shooting occurred on the day Victim died. In that testimony, Peña stated that, on the day Victim died, Defendant told Peña that Defendant and Victim were fighting. Peña also testified that he saw and heard Victim yelling at Defendant from the front door of the house where Defendant and Victim lived. Victim told Defendant to give her the keys to "[her] house," that she had "papers," and that she wanted Defendant "out of [her] house." Peña testified that he then saw Defendant and Victim go inside the house and heard a gunshot. There was no sign of forced entry into the house. The jury heard testimony that, in a jail call days after the murder, Defendant stated, "That fucking bitch took my house. She changed the paperwork without me knowing it."

**{21}** The jury also heard evidence tying Defendant to the gun used in the shooting. The police found a .45 caliber handgun under a seat in Defendant's truck, and a firearm expert confirmed that the .45 caliber bullet and cartridge found at the crime scene were fired from the gun found in Defendant's truck. Two .45 caliber magazines were also found in the truck, including one inside the gun, and one magazine contained Defendant's fingerprints. After a police officer transported Defendant to the police station, the officer found four .45 caliber rounds on the floor of his police car, which the officer testified were not there before transporting Defendant. When police searched Defendant they found a live .45 caliber round in his sock. Thus, evidence of Defendant's guilt separate from the alleged error was substantial.

**{22}** In sum, we conclude there is no reasonable possibility the alleged error in admitting the video contributed to the jury's decision to convict Defendant. Accordingly, any error was harmless.

**CONCLUSION**

**{23}** Based on the foregoing, we affirm.

**{24} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**J. MILES HANISEE, Judge**